IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| Diane L. Gruber and Mark Runnels,<br><br>    Plaintiffs,<br><br>    vs.<br><br>Oregon State Bar, a public corporation,<br><br>    Defendant. | Case No. <u>3:18-cv-01591-MO</u><br>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

    This is a Civil Rights action brought by two attorneys who currently practice law in the State of Oregon. As such, they are members of Defendant Oregon State Bar as required by ORS 9.160 and have paid all dues and assessments required to maintain their membership in order to practice law in the State of Oregon.

**FACTS**

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

MEMORANDUM - Page 1

The facts, at least as to the liability portion of this case, are clear and undisputed. Plaintiff's request the Court take Judicial Notice of the provisions of the following provisions of Oregon law:

> **9.160 Bar membership required to practice law; exceptions.** (1) Except as provided in this section, a person may not practice law in this state, or represent that the person is qualified to practice law in this state, unless the person is an active member of the Oregon State Bar. . . ."

> **9.166 Enjoining practicing law without a license; restitution to victim.** If the board has reason to believe that a person is practicing law without a license, the board may maintain a suit for injunctive relief in the name of the Oregon State Bar against any person violating ORS 9.160. The court shall enjoin any person violating ORS 9.160 from practicing law without a license. Any person who has been so enjoined may be punished for contempt by the court issuing the injunction. An injunction may be issued without proof of actual damage sustained by any person. The court shall order restitution to any victim of any person violating ORS 9.160. The prevailing party may recover its costs and attorney fees in any suit for injunctive relief brought under this section in which the board is the plaintiff."

> **9.191 Annual membership fees; professional liability assessments**. (1) Except as provided in subsection (2) of this section, the annual membership fees to be paid by members of the Oregon State Bar shall be established by the Board of Governors of the Oregon State Bar, and each year notice of the proposed fees for the coming year shall be published and distributed to the membership not later than 20 days before the annual meeting of the house of delegates. Any increase in annual membership fees over the amount established for the preceding year must be approved by a majority of delegates of the house of delegates voting thereon at the annual meeting of the house of delegates. The board shall establish the date by which annual membership fees must be paid.

> (2) The board shall establish prorated membership fees payable for the year that a member is admitted to the practice of law in this state. If the new member is admitted on or before the date established by the board for the payment of annual membership fees under subsection (1) of this section, the new member must pay the full annual membership fees established under subsection (1) of this section.

> (3) In establishing annual membership fees, the board shall consider and be guided by the anticipated financial needs of the state bar for the year for which the fees are established, time periods of membership and active or inactive status of members. Annual membership fees may include any amount assessed under any plan for professional liability insurance for active members engaged in the private practice of law whose principal offices are in Oregon as provided in ORS 9.080 (2). The board may not require that a member who has been admitted to practice law in

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

1  Oregon for 50 years or more pay membership fees, assessments or any amount under ORS 9.645, except that the member shall be required to pay any amount assessed under any plan for professional liability insurance if the member is engaged in the private practice of law and the member's principal office is in Oregon."

**9.200 Effect of failure to pay membership fees; reinstatement**. (1) Any member in default in payment of membership fees established under ORS 9.191 (1) or any member in default in payment of assessed contributions to a professional liability fund established under ORS 9.080 (2) shall be given written notice of delinquency and a reasonable time to cure the default. The chief executive officer of the Oregon State Bar shall send the notice of delinquency to the member at the member's electronic mail address on file with the bar on the date of the notice. The chief executive officer shall send the notice by mail to any member who is not required to have an electronic mail address on file with the bar under the rules of procedure. If a member fails to pay the fees or contributions within the time allowed to cure the default as stated in the notice, the member is automatically suspended. The chief executive officer shall provide the names of all members suspended under this section to the State Court Administrator and to each of the judges of the Court of Appeals, circuit and tax courts of the state.

(2) An active member delinquent in the payment of fees or contributions is not entitled to vote.

(3) A member delinquent in the payment of fees or contributions may be assessed a late payment penalty determined by the board of governors.

(4) A member suspended for delinquency under this section may be reinstated only on compliance with the rules of the Supreme Court and the rules of procedure and payment of all required fees or contributions."

## ARGUMENT

Plaintiffs in this case assert that the provisions of Oregon law requiring them to be members of the Oregon State Bar and to pay dues, fees and assessments to be members of the Oregon State Bar violate their rights to Freedom of Speech and Freedom of Association protected by the 1st Amendment to the United States Constitution as applied to the States by the 14th Amendment to the United States Constitution.

Plaintiffs are, of course, aware of the decisions of the United States Supreme Court in *Lathrop v. Donohue*, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961) and *Keller v.*

MEMORANDUM - Page 3

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

*State Bar of California*, 496 U.S. 1, 110 S. Ct. 2228, 110 L. Ed. 2d 1(1990) where the Supreme Court allowed integrated bars. However, the Supreme Court's recent decision in *Janus v. American Federation of State, County and Municipal Employees, et al*, 585 U. S. \_\_\_\_ (No. 16–1466) (2018) shows that those cases are no longer good law.

*Lathrop*, supra, involved a challenge to the establishment of an integrated bar for attorneys in Wisconsin as is provided for in Oregon law. The Supreme Court upheld the requirement that attorneys in Wisconsin could be required to be members of the bar and be required to pay dues to the bar. In the plurality opinion, the Supreme Court stated:

> "In our view the case presents a claim of impingement upon freedom of association no different from that which we decided in *Railway Employees' Dept. v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112. We there held that § 2, Eleventh of the Railway Labor Act, 45 U.S.C. § 152, 45 U.S.C.A. § 152, subd. 11, Eleventh, did not on its face abridge protected rights of association in authorizing union-shop agreements between interstate railroads and unions of their employees conditioning the employees' continued employment on payment of union dues, initiation fees and assessments."

*Lathrop* at 842. Justice Harlan, in his concurring opinion, stated:

> "The *Hanson* case, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112, decided by a unanimous Court, surely lays at rest all doubt that a State may Constitutionally condition the right to practice law upon membership in an integrated bar association, a condition fully as justified by state needs as the union shop is by federal needs."

*Lathrop* at 849.

The broad approval of an integrated bar was modified somewhat in 1990 when the Supreme Court was asked to determine if a bar could use compulsory fees paid by attorneys for political or ideological purposes. In *Keller v. State Bar of California*, 496 U.S. 1, 110 S. Ct. 2228, 110 L. Ed. 2d 1(1990), the Supreme Court held that dues required to be paid by attorneys to a bar could not be used for ideological purposes, citing it's case of *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261

MEMORANDUM - Page 4

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

(1977) as the basis for that decision. The Supreme Court held:

> "*Abood* held that a union could not expend a dissenting individual's dues for ideological activities not "germane" to the purpose for which compelled association was justified: collective bargaining. Here the compelled association and integrated bar is justified by the State's interest in regulating the legal profession and improving the quality of legal services. The State Bar may therefore constitutionally fund activities germane to those goals out of the mandatory dues of all members. It may not, however, in such manner fund activities of an ideological nature which fall outside of those areas of activity.

*Keller* at 13. Thus, it is clear that the previous cases decided by the United States Supreme Court were entirely based upon it's decisions relating to the union shop decisions.

On June 28, 2018, the United States Supreme Court decided the case of *Janus v. American Federation of State, County and Municipal Employees, et al*, 585 U.S. \_\_\_\_\_ (No. 16–1466) (2018) in which is specifically overruled the *Abood* case.

> "We upheld a similar law in *Abood v. Detroit Bd. of Ed.*, 431 U. S. 209 (1977), and we recognize the importance of following precedent unless there are strong reasons for not doing so. But there are very strong reasons in this case. Fundamental free speech rights are at stake. *Abood* was poorly reasoned. It has led to practical problems and abuse. It is inconsistent with other First Amendment cases and has been undermined by more recent decisions. Developments since *Abood* was handed down have shed new light on the issue of agency fees, and no reliance interests on the part of public-sector unions are sufficient to justify the perpetuation of the free speech violations that *Abood* has countenanced for the past 41 years. ***Abood* is therefore overruled**." (Emphasis added)

*Janus* Slip Opinion at page 2. The Supreme Court went on to say:

> "The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech. We have held time and again that freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U. S. 705, 714 (1977); see *Riley v. National Federation of Blind of N. C., Inc.*, 487 U. S. 781, 796–797 (1988); *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U. S. 539, 559 (1985); *Miami Herald Publishing Co. v. Tornillo*, 418 U. S. 241, 256–257 (1974); accord, *Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal.*, 475 U. S. 1, 9 (1986) (plurality opinion). The right to eschew association for expressive purposes

MEMORANDUM - Page 5

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

is likewise protected. *Roberts v. United States Jaycees*, 468 U. S. 609, 623 (1984) ("Freedom of association . . . plainly presupposes a freedom not to associate"); see *Pacific Gas & Elec.*, supra, at 12 ("[F]orced associations that burden protected speech are impermissible"). As Justice Jackson memorably put it:"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 642 (1943) (emphasis added).

Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned. Suppose, for example, that the State of Illinois required all residents to sign a document expressing support for a particular set of positions on controversial public issues—say, the platform of one of the major political parties. No one, we trust, would seriously argue that the First Amendment permits this.

Perhaps because such compulsion so plainly violates the Constitution, most of our free speech cases have involved restrictions on what can be said, rather than laws compelling speech. But measures compelling speech are at least as threatening."

*Janus* Slip Opinion at 7-8. The Supreme Court went on to state:

"Compelling a person to subsidize the speech of other private speakers raises similar First Amendment concerns. *Knox*, supra, at 309; *United States v. United Foods, Inc.*, 533 U. S. 405, 410 (2001); *Abood*, supra, at 222, 234–235. As Jefferson famously put it, "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical." A Bill for Establishing Religious Freedom, in 2 Papers of Thomas Jefferson 545 (J. Boyd ed. 1950) (emphasis deleted and footnote omitted); see also *Hudson*, 475 U. S., at 305, n. 15. We have therefore recognized that a "'significant impingement on First Amendment rights'" occurs when public employees are required to provide financial support for a union that "takes many positions during collective bargaining that have powerful political and civic consequences." *Knox*, supra, at 310–311 (quoting *Ellis v. Railway Clerks*, 466 U. S. 435, 455 (1984))."

*Janus*, Slip Opinion at 9

The present case involving compulsory payment of dues, fees and assessments to maintain membership in the Oregon State Bar in order to engage in their State regulated profession is no different. The Oregon State Bar has clearly engaged in political and ideological speech that the Plaintiffs in this case object to. (Declaration of Diane L. Gruber; Declaration of Mark Runnels)

MEMORANDUM - Page 6

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

However, just because Oregon laws which compel the subsidy of the Oregon State Bar's ideological speech impinge on the Plaintiffs' First Amendment rights, it does not automatically follow that those laws are unconstitutional. Instead, the Court must determine if the purposes of the laws pass the required level of scrutiny to allow that impingement.

> "Because the compelled subsidization of private speech seriously impinges on First Amendment rights, it cannot be casually allowed. Our free speech cases have identified "levels of scrutiny" to be applied in different contexts, and in three recent cases, we have considered the standard that should be used in judging the constitutionality of agency fees. See *Knox*, supra; *Harris*, supra; *Friedrichs v. California Teachers Assn.*, 578 U. S. ___ (2016) (per curiam) (affirming decision below by equally divided Court).
> In *Knox*, the first of these cases, we found it sufficient to hold that the conduct in question was unconstitutional under even the test used for the compulsory subsidization of commercial speech. 567 U. S., at 309–310, 321–322. Even though commercial speech has been thought to enjoy a lesser degree of protection, see, e.g., *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N. Y.*, 447 U. S. 557, 562–563 (1980), prior precedent in that area, specifically *United Foods*, supra, had applied what we characterized as "exacting" scrutiny, *Knox*, 567 U. S., at 310, a less demanding test than the "strict" scrutiny that might be thought to apply outside the commercial sphere. **Under "exacting" scrutiny, we noted, a compelled subsidy must "serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms**." *Ibid*. (internal quotation marks and alterations omitted)." (Emphasis added)

*Janus*, Slip Opinion at 10.

In the cases decided previously regarding integrated bar's, the court utilized the "balancing test" to determine if the infringement on the associational rights of attorneys could be allowed. Justice Black, in his dissenting opinion in *Lathrop, supra*, stated:

> "The first of these is that the use of compelled dues by an integrated bar to further legislative ends contrary to the wishes of some of its members can be upheld under the so-called 'balancing test,' which permits abridgment of First Amendment rights so long as that abridgment furthers some legitimate purpose of the State. Under this theory, the appellee contends, abridgments of speech 'incidental' to an integrated bar must be upheld because the integrated bar performs many valuable services for the public. As pointed out above, the Wisconsin Supreme Court

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

embraced this theory in express terms. And the concurring opinion of Mr. Justice HARLAN, though not purporting to distinguish the Street case, also adopts the case-by-case 'balancing' approach under which such a distinction as, indeed, any desired distinction is possible."

*Lathrop at 871.*

The Supreme Court has not been clear in most of it's previous ruling regarding the test to be used to determine if compulsory funding and membership passes constitutional muster. As shown in the above quote from *Lathrop*, usually this is pointed out in the dissent. In the *Abood, supra* case, it was stated:

> "Before today it had been well established that when state law intrudes upon protected speech, the State itself must shoulder the burden of proving that its action is justified by overriding state interests. See *Elrod v. Burns*, supra, 427 U.S. at 363, 96 S.Ct. at 2685; *Healy v. James*, 408 U.S. 169, 184, 92 S.Ct. 2338 2347, 33 L.Ed.2d 266 (1972); *Speiser v. Randall*, 357 U.S. 513, 525-526, 78 S.Ct. 1332, 1341-42, 2 L.Ed.2d 1460 (1958). The Court, for the first time in a First Amendment case, simply reverses this principle. Under today's decision, a nonunion employee who would vindicate his First Amendment rights apparently must initiate a proceeding to prove that the union has allocated some portion of its budget to "ideological activities unrelated to collective bargaining." Ante, at 237-241. I would adhere to established First Amendment principles and require the State to come forward and demonstrate, as to each union expenditure for which it would exact support from minority employees, that the compelled contribution is necessary to serve overriding governmental objectives."

*Abood* at 263.

Thus, the key holding in *Janus, supra*, is that the use of the "balancing test" to determine if governmental action which infringes on an individual's freedom of speech and freedom of association is to be allowed was rejected.

The Supreme Court stated:

> "The dissent, on the other hand, proposes that we apply what amounts to rational-basis review, that is, that we ask only whether a government employer could reasonably believe that the exaction of agency fees serves its interests. See *post*, at 4 (KAGAN, J., dissenting) ("A government entity could reasonably conclude that such a clause was needed"). **This form of minimal scrutiny is foreign to our free-speech jurisprudence, and we reject it here**. At the same time, we again find it unnecessary to decide the issue of strict scrutiny because the
MEMORANDUM - Page 8

Michael L. Spencer, OSB #830907  
403 Main St.  
Klamath Falls, OR 97601  
541-883-7139  
mlslaw@live.com

Illinois scheme cannot survive under even the more permissive standard applied in *Knox* and *Harris*." (Emphasis added)

*Janus* Slip Opinion at 10-11

Plaintiffs in this case contend that the "strict scrutiny" test is the appropriate test for the laws of the State of Oregon but, like in *Janus, supra*, it is clear that those laws cannot even pass the less restrictive "exacting scrutiny" test. Plaintiffs do not deny that the State of Oregon has a compelling state interest in regulating the legal profession and improving the quality of legal services. The question here is whether the means by which the State of Oregon has chosen, compulsory membership and compelled subsidation, could be achieved ". . . through means significantly less restrictive of associational freedoms." *Ibid.*

The State of Oregon regulates many other professions, ranging from Architects in Chapter 671 of the Oregon Revised Statues to Outfitters and Guides in Chapter 704. Included in the professions regulated are doctors, who are required to be licensed pursuant to ORS 677.080. However, doctors are not required to be members of the Oregon Medical Association, which is a non-profit corporation. Surely, the State of Oregon has a very compelling state interest in ensuring that the practice of medicine, where a patient could be killed, is done in a proper and professional manner. However, the State of Oregon has deemed that it can accomplish this interest through licensing of doctors by the State and imposing discipline on doctors who fail to meet the standards of that practice. ORS 677.184 to 677.232 sets out the disciplinary process for doctors.

All 50 States and the District of Columbia regulate the practice of law. Almost half of those States do not require membership in a Bar but instead provide for a licensing and disciplinary system with a voluntary bar association. (See attached Overview of

MEMORANDUM - Page 9

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

State Attorney Licensing Requirements-Appendix 1) Thus, in almost half of the jurisdictions regulating the practice of law in this Country, having a license system rather than mandatory membership in a bar accomplishes the compelling State interest of regulating the legal profession and improving the quality of legal services.

If the State of Oregon is able to regulate other professions, including the medical profession, through a licensing system and the majority of the jurisdictions which regulate the practice of law find it adequate to use a licensing system, how can Oregon's system of requiring membership in the Oregon State Bar, coupled with compulsory subsidies, be the only means to accomplish the State's interest? Certainly, a licensing system where the licensing agency does not engage in political or ideological speech would accomplish those goals. The Oregon State Bar should appropriately become a professional trade organization, such as the Oregon Medical Association, and continue to provide valuable services to both those attorneys who voluntarily choose to associate with it and to the general public.

Again, turning to the *Janus* decision, the Supreme Court has provided valuable guidance in answering this question. In *Abood*, the compelling state interest in requiring forced subsidies to unions was "labor peace." *Janus*, Slip Opinion at 11. The Supreme Court noted that federal employment law did not require agency fees and that "labor peace" was not an issue.

> "Whatever may have been the case 41 years ago when *Abood* was handed down, it is now undeniable that "labor peace" can readily be achieved "through means significantly less restrictive of associational freedoms" than the assessment of agency fees."

*Janus*, Slip Opinion at 12.

Another recent United States Supreme Court sheds further light on this subject:

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

"The First Amendment creates "an open marketplace" in which differing ideas about political, economic, and social issues can compete freely for public acceptance without improper government interference. *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 208, 128 S.Ct. 791, 169 L.Ed.2d 665 (2008). See also *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) ; *Mills v. Alabama*, 384 U.S. 214, 218-219, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). The government may not prohibit the dissemination of ideas that it disfavors, nor compel the endorsement of ideas that it approves. See *R.A.V. v. St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) ; *Brandenburg v. Ohio*, 395 U.S. 444, 447-448, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)(per curiam); *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) ; *Wooley v. Maynard*, 430 U.S. 705, 713-715, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) ; *Riley v. National Federation of Blind of N.C., Inc.*, 487 U.S. 781, 797, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (The First Amendment protects "the decision of both what to say and what not to say" (emphasis deleted)). And the ability of like-minded individuals to associate for the purpose of expressing commonly held views may not be curtailed. See *Roberts v. United States Jaycees*, 468 U.S. 609, 623, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) ( "Freedom of association ... plainly presupposes a freedom not to associate"); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-461, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)."

*Knox v. Serv. Emps. Int'l Union*, 132 S. Ct. 2277, 2289, 183 L.Ed.2d 281, 567 U.S. 298 (2012) The Supreme Court went on to say:

"We made it clear that compulsory subsidies for private speech are subject to exacting First Amendment scrutiny and cannot be sustained unless two criteria are met. First, there must be a comprehensive regulatory scheme involving a "mandated association" among those who are required to pay the subsidy. *Id.*, at 414, 121 S.Ct. 2334. Such situations are exceedingly rare because, as we have stated elsewhere, mandatory associations are permissible only when they serve a "compelling state interes[t] ... that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts, supra*, at 623, 104 S.Ct. 3244. Second, even in the rare case where a mandatory association can be justified, compulsory fees can be levied only insofar as they are a "necessary incident" of the "larger regulatory purpose which justified the required association." *United Foods, supra*, at 414, 121 S.Ct. 2334."

*Ibid.* The Supreme Court further stated:

"Contrary to the view of the Ninth Circuit panel majority, we did not call for a balancing of the "right" of the union to collect an agency fee against the First Amendment rights of nonmembers. 628 F.3d, at 1119-1120. As we noted in *Davenport*, "unions have no constitutional entitlement to the fees of nonmember-employees." 551 U.S., at 185, 127 S.Ct. 2372. A union's "collection of

MEMORANDUM - Page 11

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

> fees from nonmembers is authorized by an act of legislative grace," 628 F.3d, at 1126 (Wallace, J., dissenting)-one that we have termed "unusual" and "extraordinary," *Davenport, supra*, at 184, 187, 127 S.Ct. 2372. Far from calling for a balancing of rights or interests, *Hudson* made it clear that any procedure for exacting fees from unwilling contributors must be "carefully tailored to minimize the infringement" of free speech rights. 475 U.S., at 303, 106 S.Ct. 1066. And to underscore the meaning of this careful tailoring, we followed that statement with a citation to cases holding that measures burdening the freedom of speech or association must serve a "compelling interest" and must not be significantly broader than necessary to serve that interest."

*Knox at* 313.

As indicated, the cases cited all utilize the lesser "exacting scrutiny" test and show that Oregon's approach to the regulation of the practice of law is ". . . significantly broader than necessary to serve. . ." the interest of the State in regulating the practice of law. *Ibid.* A licensing structure, as used by many other States and used by the State of Oregon for all other professions, would have no impact upon the Plaintiff's associational rights since they would not become a "member" of the licensing entity.

CONCLUSION

In conclusion, there are no genuine issues of material fact regarding Count I of Plaintiffs' Complaint and Plaintiffs are entitled to Judgment as a matter of Law that the provisions of Oregon law requiring them to be members of the Oregon State Bar and pay compulsory dues violates their rights of Freedom of Speech and Freedom of Association as protected by the First Amendment to the United States Constitution.

Dated this November 5, 2018.

/s/ Michael L. Spencer
Michael L. Spencer, OSB #830907
Attorney for Plaintiffs

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com

MEMORANDUM - Page 12

| | Information Sheet – Integrated Bar Associations | | | | | | | | | Integrated Bar Association Dates | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date Integrated | Lawyers 2017 USA | Lawyers 2017 *Integrated Bar* | Discipline System Separate *Integrated Bar* | | | | | | | |
| 1 | Alabama | 1923 | 14,717 | 14,717 | | | | | 1 | North Dakota | 1921 | |
| 2 | Alaska | 1955 | 2,402 | 2,402 | | | | | 2 | Alabama | 1923 | |
| 3 | Arizona | 1933 | 14,960 | 14,960 | | | | | 3 | Idaho | 1923 | |
| 4 | California | 1927 | 168,746 | 168,746 | 1 | 168,746 | | | 4 | New Mexico | 1925 | |
| | Colorado | | 22,164 | | | | | | 5 | California | 1927 | |
| | Connecticut | | 21,341 | | | | | | 6 | Nevada | 1928 | |
| | Delaware | | 2,978 | | | | | | 7 | Utah | 1931 | |
| 5 | Florida | 1950 | 77,008 | 77,008 | | 77,008 | | | 8 | South Dakota | 1931 | |
| 7 | Hawaii | 1969 | 4,236 | 4,236 | 1 | 4,236 | | | 9 | Mississippi | 1932 | |
| 8 | Idaho | 1923 | 3,836 | 3,836 | | | | | 10 | Washington | 1933 | |
| | Illinois | | 62,782 | | | | | | 11 | Arizona | 1933 | |
| | Indiana | | 15,826 | | | | | | 12 | North Carolina | 1933 | |
| | Iowa | | 7,523 | | | | | | 13 | Kentucky | 1934 | |
| | Kansas | | 8,218 | | | | | | 14 | Michigan | 1935 | |
| 9 | Kentucky | 1934 | 13,509 | 13,509 | | | | | 15 | Oregon | 1935 | |
| 10 | Louisiana | 1941 | 19,307 | 19,307 | | | | | 16 | Nebraska | 1937 | |
| | Maine | | 3,940 | | | | | | 17 | Wyoming | 1939 | |
| | Maryland | | 38,800 | | | | | | 18 | Texas | 1939 | |
| | Massachusetts | | 43,442 | | | | | | 19 | Oklahoma | 1939 | |
| 11 | Michigan | 1935 | 35,236 | 35,236 | 1 | 35,236 | | | 20 | Louisiana | 1941 | |
| | Minnesota | | 25,483 | | | | | | 21 | Missouri | 1946 | |
| 12 | Mississippi | 1932 | 7,067 | 7,067 | | | | | 22 | West Virginia | 1947 | |
| 13 | Missouri | 1946 | 24,787 | 24,787 | 1 | 24,787 | | | 23 | Florida | 1950 | |
| 14 | Montana | 1974 | 3,159 | 3,159 | | | | | 24 | Alaska | 1955 | |
| 15 | Nebraska | 1937 | 5,545 | 5,545 | 1 | 5,545 | | | 25 | Wisconsin | 1956 | |
| 16 | Nevada | 1928 | 7,281 | 7,281 | | | | | 26 | South Carolina | 1968 | |
| 17 | New Hampshire | 1972 | 3,507 | 3,507 | | | | | 27 | Hawaii | 1969 | |
| | New Jersey | | 41,168 | | | | | | 28 | District of Columbia | 1970 | |
| 18 | New Mexico | 1925 | 5,524 | 5,424 | 1 | 5424 | | | 29 | New Hampshire | 1972 | |
| | New York | | 177,035 | | | | | | 30 | Rhode Island | 1973 | |
| 19 | North Carolina | 1938 | 23,694 | 23,694 | | | | | 31 | Montana | 1974 | |
| 20 | North Dakota | 1921 | 1,698 | 1,698 | 1 | 1,698 | | | | | | |
| | Ohio | | 38,623 | | | | | | | | | |

| # | State | Year | Lawyers | Col4 | States | Col6 | Lawyers | Notes | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 21 | Oklahoma | 1939 | 13,470 | 13,470 | | | | | | | |
| | Oregon | 1935 | 12,227 | 12,227 | | | | | | | |
| | Pennsylvania | | 49,406 | | | | | | | | |
| 22 | Rhode Island | 1973 | 4,167 | 4,167 | 1 | | 4,167 | | | | |
| 23 | South Carolina | 1968 | 10,316 | 10,316 | 1 | | 10,316 | | | | |
| 24 | South Dakota | 1931 | 1,933 | 1,933 | | | | | | | |
| | Tennessee | | 18,461 | | | | | | | | |
| 25 | Texas | 1939 | 89,361 | 89,361 | | | | | | | |
| 26 | Utah | 1931 | 8,204 | 8,204 | | | | | | | |
| | Vermont | | 2,326 | | | | | | | | |
| | Virginia | | 24,249 | | | | | | | | |
| 27 | Washington | 1933 | 25,786 | 25,786 | | | | | | | |
| 28 | West Virginia | 1947 | 4,862 | 4,862 | | | | | | | |
| 29 | Wisconsin | 1956 | 15,549 | 15,549 | 1 | | 15,549 | | | | |
| 30 | Wyoming | 1939 | 1,776 | 1,776 | | | | | | | |
| 31 | District of Columbia | 1970 | 54,692 | 54,692 | 1 | | 54,692 | | | | |
| | | Totals | 1,282,327 | 678,462 | 11 | | 401,980 | | | | |
| | | | | | States | | | Lawyers | | | |
| | | | | | 51 | 1,282,327 | | 25,144 | All States | | |
| | | | | | 31 | 678,462 | | 21,886 | Integrated Bar States | | |
| | | | | | 11 | 401,980 | | 36,544 | Integrated Bar States with Separate Discipline Systems | | |
| | | | | | 20 | 276,482 | | 13,824 | Remainder of Integrated Bar States with Texas | | |
| | Totals | | | | 19 | 190,121 | | 10,006 | Excludes Texas – 89,361 | | |

**Sources:**

**ABA National Lawyer Population Survey, Historical Trend in Total National Lawyer Population 1878-2017**
http:/www.americanbar.org – use the search box on the site

**ABA Center for Professional Responsibility Directory of Lawyer Disciplinary Agencies, October 2016**
http:/www.americanbar.org – use the search box on the site

**ABA National Lawyer Population Survey 10-Year Trend in Lawyer Population by State Year 2017**
http:/www.americanbar.org – use the search box on the site

**ABA CLE Short History of the Disorganized, Organized, and Mandatory Bar**
http:/www.americanbar.org – use the search box on the site

**Washington Report on the Lawyer Regulation System American Bar Association Standing Committee on Professional Discipline August 2006**
http:/www.wsba.org – use search box on the site

CERTIFICATE OF SERVICE

I hereby certify that I served a true and accurate copy of the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT on:

Steven M. Wilker
Attorney at Law
Tonkon Torp LLP
888 SW Fifth Avenue
Suite 1600
Portland, OR 97204
steven.wilker@tonkon.com

of Attorneys for Defendant

by electronic means through the Court's Case Management/Electronic Case File system on the date set forth below.

November 5, 2018

/s/ Michael L. Spencer
Michael L. Spencer, OSB #830907
Attorney for Plaintiffs

Michael L. Spencer, OSB #830907
403 Main St.
Klamath Falls, OR 97601
541-883-7139
mlslaw@live.com