**Steven M. Wilker**, OSB #911882
  Direct Dial: 503.802.2040
  Email: steven.wilker@tonkon.com
**Megan Houlihan**, OSB No. 161273
  Direct Dial: 503-802-2184
  Direct Fax: 503-274-8779
  E-mail: meg.houlihan@tonkon.com
Tonkon Torp LLP
888 SW Fifth Avenue
Suite 1600
Portland, OR 97204

    Attorneys for Defendant

*See Signature Page for Additional Counsel*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DIANE L. GRUBER and MARK RUNNELS, | Civil No. 3:18-cv-01591-JR |
| Plaintiffs, | |
| v. | **DEFENDANT'S RESPONSE TO PLAINTIFFS' FRCP 56 MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| OREGON STATE BAR, a public corporation, | |
| Defendant. | |

## INTRODUCTION

The Oregon State Bar ("Bar") regulates the practice of law in Oregon, helping ensure that lawyers meet the high ethical standards essential to their role "as assistants to the court in search of a just solution to disputes." *Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447, 460 (1978). Plaintiffs, Diane Gruber and Mark Runnels, are two members of the Bar. Plaintiffs allege that the Bar violates their First and Fourteenth Amendment rights by requiring them to become members of the Bar and pay annual membership fees. In their first claim for relief, Plaintiffs

PAGE 1 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' FRCP 56 MOTION FOR
           PARTIAL SUMMARY JUDGMENT

allege that the Oregon statutes authorizing bar membership and compulsory fees are unconstitutional on their face and as applied to Plaintiffs. They request a declaration that the statutes violate the United States Constitution and an injunction preventing the Bar from enforcing these statutes. They also seek a return of all fees they paid to the Bar for the last two years. In their second claim for relief, Plaintiffs allege that the Bar violated the Constitution by compelling Plaintiffs to pay for political and ideological activities with which they do not agree. These activities allegedly include the Bar's publication of a statement on white nationalism and the normalization of violence. Plaintiffs request a return of all fees they paid for the Bar's political or ideological activities.

Under Federal Rule of Civil Procedure 56, Plaintiffs move for partial summary judgment on liability issues relating to their first claim for relief. For the reasons already articulated in the Bar's motions to dismiss (ECF 14), Plaintiffs are not entitled to relief on either their first or second claims. Moreover, Plaintiffs fall far short of the standards that would entitle them to partial summary judgment. Plaintiffs base their motion entirely on the argument that the Supreme Court's recent decision in *Janus v. American Federation of State Country & Municipal Employees*, —U.S.—, 138 S. Ct. 2448 (2018), overrules other Supreme Court cases sanctioning mandatory bar organizations and compulsory fees, primarily *Keller v. State Bar of California*, 496 U.S. 1 (1990). Plaintiffs drastically overestimate *Janus*'s effect. Contrary to Plaintiffs' reading of the case, *Janus* does not limit states' ability to require bar membership and membership fees as a condition of practicing law.

## **SUMMARY JUDGMENT STANDARD**

To obtain summary judgment on their first claim, Plaintiffs must "show[] that there is no genuine dispute as to any material fact and that [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiffs do not meet the second prong of this standard because they are not entitled to judgment as a matter of law.

/ / /

/ / /

PAGE 2 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' FRCP 56 MOTION FOR
            PARTIAL SUMMARY JUDGMENT

## ANALYSIS

I.  **Existing Supreme Court Precedent Allows States to Require Mandatory Membership in State Bar Organizations and Compulsory Membership Fees as Conditions of Practicing Law**

The United States Supreme Court has already held that mandatory state bar organizations that assess compulsory membership fees do not amount to a constitutional deprivation. The first of these cases was *Lathrop v. Donohue*, 367 U.S. 820 (1961). There, the Supreme Court held that the Wisconsin State Bar could constitutionally compel attorneys to join and contribute financial support. The Wisconsin State Bar was a mandatory, *i.e.*, integrated, bar that engaged in activities to "promote the public interest by maintaining high standards of conduct in the legal profession and by aiding in the efficient administration of justice." *Id.* at 831–32 (Brennan, J., plurality). Some of these activities involved expressing views on legislation. *See id.* at 843. The Supreme Court rejected the argument that the integrated bar ran afoul of the First Amendment's guarantee of free association. The Wisconsin State Bar furthered "the State's legitimate interests in raising the quality of professional services," and the State could "constitutionally require that the costs of improving the profession in this fashion should be shared by the subjects and beneficiaries of the regulatory program, the lawyers, even though the organization created to attain the objective also engages in some legislative activity." *Id.* In a concurring opinion, Justice Harlan stated that the Court's precedent left no doubt that States "may constitutionally condition the right to practice law upon membership in an integrated bar association." *Id.* at 849 (Harlan, J., concurring in judgment).

The *Lathrop* plurality expressly declined to reach the related question whether mandatory membership in the bar and compelled membership fees infringed on an attorney's right to free speech. *Id.* at 844 (Brennan, J., plurality). The Supreme Court took up this question in *Keller*, 496 U.S. 1. The *Keller* Court determined that an integrated bar did not transgress the right to free speech because "the compelled association and integrated bar are justified by the State's interest in regulating the legal profession and improving the quality of legal services. The State Bar may therefore constitutionally fund activities germane to those goals out of the mandatory

PAGE 3 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' FRCP 56 MOTION FOR
              PARTIAL SUMMARY JUDGMENT

dues of all members." *Id.* at 13–14. The State Bar could not, however, "fund activities of an ideological nature which fall outside of those areas of activity." *Id.* at 14.

Here, Plaintiffs' first claim accuses the Bar of doing nothing more than what *Lathrop* and *Keller* held that an integrated bar may do: require membership and dues as a condition of practicing law in the state. Just as in *Lathrop* and *Keller*, Oregon's interest in regulating the legal profession and improving the quality of legal services justify this requirement. Accordingly, the requirement that Oregon attorneys join the Bar and pay membership dues is not a constitutional deprivation. The Supreme Court's recent decision in *Janus* is not to the contrary.

## II. *Janus* Did Not Overrule Supreme Court Precedent Concerning Mandatory State Bar Organizations and Compulsory Membership Fees

### A. *Janus* Does Not Require a Higher Level of Scrutiny Than the Supreme Court Applied in *Keller*

As their primary line of attack, Plaintiffs contend that the Supreme Court's decisions on mandatory state bars invoke a "balancing test," in which courts weigh an alleged abridgment of First Amendment rights against some reasonable purpose of the state. (Pl. Br. at 7–8.) According to Plaintiffs, *Janus* replaced this test with "exacting scrutiny" and thus undermined the rationale of the mandatory bar cases. (Pl. Br. at 8–9.) However, *Janus* applied the same level of scrutiny that the Supreme Court used in *Harris v. Quinn*, —U.S.—, 134 S. Ct. 2618 (2014), and which the Court found to be entirely consistent with *Keller*.

In *Harris*, the Supreme Court declined to follow its case law on mandatory "agency fees"[1] for union work related to the collective-bargaining process. 134 S. Ct. at 2639. Instead, the Supreme Court undertook a fresh analysis of whether a state could require non-union home healthcare workers to pay agency fees. In doing so, the Supreme Court applied "exacting First Amendment scrutiny." *Id.* (quoting *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 310 (2012)). This is the same level of scrutiny that the Court applied in *Janus* when it concluded that the First

---

[1] The Supreme Court uses the term "agency fee" to refer to a percentage of union dues charged to employees who decline to join a union. *See Janus*, 138 S. Ct. at 2460.

Amendment prevents public-sector unions from charging nonmembers fees for activities with which the nonmembers disagree. *See Janus*, 138 S. Ct. at 2465 ("[W]e again find it unnecessary to decide the issue of strict scrutiny because the Illinois scheme cannot survive under even the more permissive standard applied in *Knox* and *Harris*.").[2]

After applying exacting scrutiny to determine that the agency-fee scheme violated the First Amendment, the *Harris* Court addressed the reach of its ruling. In particular, it addressed the implications for *Keller*'s holding that states could require bar members to pay for activities germane to regulating the legal profession and improving the quality of legal services. *Harris*, 134 S. Ct. at 2643–44. The Court quickly concluded that *Keller*'s holding "fits comfortably within the [exacting scrutiny] framework applied in the present case." *Id.* at 2643. Justice Alito, writing for the majority as he did in *Janus*, explained:

> Licensed attorneys are subject to detailed ethics rules, and the bar rule requiring the payment of dues was part of this regulatory scheme. The portion of the rule that we upheld served the "State's interest in regulating the legal profession and improving the quality of legal services." States also have a strong interest in allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices. Thus, our decision in this case is wholly consistent with our holding in *Keller*.

*Id.* at 2643–44 (citations omitted). The level of scrutiny applied in *Keller* is therefore consistent with the exacting scrutiny applied in *Harris* and *Janus*.

Additionally, *Keller* is consistent with how the Supreme Court defined "exacting scrutiny" in *Knox*, 567 U.S. 298, a case that *Janus* cited approvingly. *See Janus*, 138 S. Ct. at 2464–65. *Knox* held that a union's imposition of mid-term dues and fee increases without appropriate notice and opt-out opportunities violated nonunion state employees' constitutional

---

[2] In *Harris* and *Janus*, the Supreme Court did not precisely define exacting scrutiny or articulate precisely how it differs from strict scrutiny. Commentators have found this omission puzzling, noting that *Harris* and *Janus* may be difficult to apply in future cases. *See* Erwin Chemerinsky & Catherine L. Fisk, *Exaggerating the Effects of* Janus*: A Reply to Professors Baude and Volokh*, 132 Harv. L. Rev. F. 42, 56 n.88 & 57 (2018). Elsewhere, the Supreme Court has defined "exacting scrutiny" as a standard that requires "a substantial relation" between the challenged conduct and "a sufficiently important governmental interest." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366 (2010) (internal quotation marks omitted).

rights. *Knox*, 567 U.S. at 314. In reaching its decision that the union had exceeded the First Amendment limits on compulsory subsidies for private speech, the Court applied "exacting First Amendment scrutiny." *Id.* at 310. This level of scrutiny involved "two criteria." *Id.* "First, there must be a comprehensive regulatory scheme involving a 'mandated association' among those who are required to pay the subsidy." *Id.* (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 414 (2001)). "Second, even in the rare case where a mandatory association can be justified, compulsory fees can be levied only insofar as they are a 'necessary incident' of the 'larger regulatory purpose which justified the required association.'" *Id.* (quoting *United Foods*, 533 U.S. at 414).

The *Keller* decision satisfies the two-part *Knox* test. First, *Keller* involved a comprehensive regulatory scheme that mandated an association among lawyers who were "called upon to pay a fair share of the cost of the professional involvement in this effort." *Keller*, 496 U.S. at 12. Second, the *Keller* Court limited compulsory fees to those fees that supported activities germane to the reason justifying the mandatory association in the first place, for example, expenditures (including expenditures for speech) that related to "regulating the legal profession and improving the quality of legal services." *Id.* at 13. Commenting on the *Keller* decision, the Supreme Court has concluded that "compelled contribution of moneys to pay for expressive activities" of a bar organization constitutes "a necessary incident of a larger expenditure for an otherwise proper goal requiring the cooperative activity." *United Foods*, 533 U.S. at 414.

No Supreme Court decision, including *Janus*, suggests that *Keller* applied a level of scrutiny that is too lenient. To the contrary, *Harris* noted that the *Keller* decision fits into the exacting scrutiny framework. *Keller* is also consistent with the level of scrutiny applied in *Knox*. Time and again, the Supreme Court has approvingly cited the *Keller* decision. *See Harris*, 134 S. Ct. at 2643–44; *United Foods*, 533 U.S. at 414. Plaintiffs fail to explain why this Court should not accept the Supreme Court's express statements that *Keller* remains precedential even in light of a re-examination of the standards that apply to labor unions.

### B. *Janus*'s Reasons for Overruling *Abood* Do Not Apply to *Keller*

In addition to arguing that *Janus* requires a higher level of scrutiny than the standard applied in *Keller*, Plaintiffs argue that *Janus* necessarily overrules *Keller* because it overruled *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). (Pl. Br. at 5.) However, the Supreme Court overruled *Abood* on the basis that agency fees have proven unjustified over time. Although *Keller* cites *Abood*, *Keller* gives a different underlying justification for mandatory bar membership and membership fees. *Keller*'s justifications remain compelling.

In *Abood*, the Supreme Court held that agency fees were justified by the state's interest in maintaining "labor peace" and "avoiding free riders." *See Abood*, 431 U.S. at 224. *Janus* rejected these justifications as insufficient to allow compelled subsidies for the union's speech. *Janus*, 138 S. Ct. at 2465–67. First, the Supreme Court cited overwhelming evidence that employers could avoid inter-union rivalries and conflicting demands from different unions without resorting to agency fees. *Id.* at 2465–66. This evidence included the success of federal employee unions, which could not charge agency fees, and unions that serve as the exclusive representatives of "millions of public employees in the 28 States that have laws generally prohibiting agency fees." *Id.* at 2466. Second, the Supreme Court rejected the free-rider justification on the basis that "it is simply not true that unions will refuse to serve as the exclusive representative of all employees in the unit if they are not given agency fees." *Id.* at 2467. "Nor can such fees be justified on the ground that it would otherwise be unfair to require a union to bear the duty of fair representation. That duty is a necessary concomitant of the authority that a union seeks when it chooses to serve as the exclusive representative of all the employees in a unit." *Id.* at 2469. Without these justifications, agency fees could not pass constitutional muster.

In contrast to the justifications offered in *Abood* and rejected in *Janus*, *Keller* rests on "the [s]tate's interest in regulating the legal profession and improving the quality of legal services." *Keller*, 496 U.S. at 13. The Supreme Court has recognized these interests as compelling since its 1961 decision in *Lathrop*. *See* 367 U.S. 820. In *Harris*, decided only four

years ago, the Supreme Court reaffirmed that bar organizations are justified by states' compelling interest in regulating the legal profession and improving the quality of legal services. *Harris*, 134 S. Ct. at 2643–44. As Justice Alito noted in *Harris*, bar organizations differ from labor unions in significant ways. *Id.* Bar organizations are part of a "regulatory scheme" aimed at "ensuring that attorneys adhere to ethical practices," making labor unions an imperfect analogy to the bodies that regulate attorneys. *Id.* Accordingly, the underpinnings of *Keller* have not eroded in the same fashion as *Abood*'s justifications. *Keller* stands on its own two feet.[3]

### C. This Court Must Follow *Keller* Absent an Express Ruling from the Supreme Court

Plaintiffs' argument boils down to a request that this Court recognize an implied overruling of *Keller*. The Court is not free to grant Plaintiffs' request. "A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferior courts may voice their criticisms, but follow it they must." *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). Even where a case "appears to rest on reasons rejected in some other line of decisions," lower courts "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484–85 (1989). Until the Supreme Court elects to expressly overrule *Keller*, this Court is bound to follow it.

---

[3] In their declarations, Plaintiffs suggest that the Bar does not comply with *Keller*, but Plaintiffs have not moved for summary judgment on that basis. For example, Gruber states, "The Bar's position is a clear manifestation of it's [sic] left-wing political stance," indicating that she believes the Bar uses membership dues for non-germane activities. (Dec. of Diane Gruber at 2.) Plaintiffs also use their declarations to take issue with the adequacy of the Bar's explanation for how membership dues are used and how the Bar computed a refund for allegedly non-germane activity. These factual allegations relate only to arguments Plaintiffs make in their response to the Bar's motion to dismiss for failure to state a claim. The Court therefore should not consider the declarations for purposes of Plaintiffs' motion for summary judgment on their first claim for relief. *See* Fed. R. Civ. P. 56(a) (stating that when a party moves for summary judgment, it must "identif[y] each claim or defense—or the part of each claim or defense—on which summary judgment is sought"). And the Court *cannot* consider the declarations when ruling on the Bar's motion to dismiss for failure to state a claim, for it is not the province of the Court to consider factual disputes when deciding a 12(b)(6) motion. *See Gila River Indian Cmty. v. Waddell*, 967 F.2d 1404, 1412 (9th Cir. 1992).

Likewise, although just today the Supreme Court granted a petition for certiorari in *Fleck v. Wetch*, Case No. 17-866, *Fleck*'s disposition does not require this Court to second-guess *Keller*. In *Fleck*, the Supreme Court vacated the judgment of the Eighth Circuit and remanded it for further consideration in light of *Janus*. The Eighth Circuit had held that North Dakota's integrated bar organization did not violate the First Amendment by requiring members affirmatively to opt out of expenditures on non-germane political and ideological activities. *See Fleck*, 868 F.3d 652, 653 (8th Cir. 2017), *cert. granted, judgment vacated*, (U.S. Dec. 3, 2018). Having decided the case on August 17, 2017, the Eighth Circuit relied on *Abood* and other labor union cases before the Court's decision in *Janus*, which was issued on June 27, 2018. *See Fleck*, 868 F.3d at 654–55. Because *Fleck* involves an opt-out procedure that the Oregon State Bar has not used, this case does not turn on the rationale of *Abood* and the Supreme Court's decision to vacate and remand in *Fleck* has no effect on the present case.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# CONCLUSION

For these reasons, the Bar requests that the Court deny Plaintiffs' motion for partial summary judgment. Plaintiffs are not entitled to judgment as a matter of law.

DATED this 3rd day of December, 2018.

**TONKON TORP LLP**

By  */s/ Steven M. Wilker*
 Steven M. Wilker, OSB No. 911882
 Megan Houlihan, OSB No. 161273

**MILLER NASH GRAHAM & DUNN LLP**
 Elisa J. Dozono, OSB No. 063150
 Email: elisa.dozono@millernash.com
 Alexander M. Naito, OSB No. 124046
 alexander.naito@millernash.com
 3400 U.S. Bancorp Tower
 111 S.W. Fifth Avenue
 Portland, OR 97204
 Direct Dial: 503-205-2450

**SCHWABE, WILLIAMSON & WYATT**
 W. Michael Gillette, OSB No. 660458
 Email: wmgillette@schwabe.com
 1211 SW Fifth Avenue, Suite 1900
 Portland, OR 97204
 Direct Dial: 503-796-2927

 Attorneys for Defendant Oregon State Bar

099997/32730/9499750v2