ELLEN F. ROSENBLUM
Attorney General
SARAH WESTON  #085083
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Sarah.Weston@doj.state.or.us

Attorneys for Amicus Curiae

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DIANE L. GRUBER and MARK RUNNELS, <br><br> Plaintiffs, <br><br> v. <br><br> OREGON STATE BAR, a public corporation, <br><br> Defendant. | Case No.  3:18-CV-01591-JR <br><br> MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM |

## I.   Introduction.

Oregon Attorney General Ellen Rosenblum leads the Oregon Department of Justice (ODOJ) and is the "chief law officer for the state and all its departments."  ORS § 180.210.  The Attorney General and the ODOJ are dedicated to the ethical and independent legal representation of state government, including all elected and appointed officials, agencies, boards and commissions.[1]  With more than 300 attorneys, the ODOJ is often referred to as Oregon's largest

---

[1] ODOJ is also responsible for a number of other programs, including child support, district attorney assistance, crime victims' compensation, charitable activity enforcement, organized crime-related law enforcement, criminal investigations, criminal intelligence, and consumer protection and education services.

Page 1 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
  SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

law firm. Although the Attorney General generally has the exclusive duty to provide legal representation the State, the legislative and judicial branches of government are authorized to, in many instances, use their own counsel instead of or in addition to the ODOJ. The State Bar, an instrumentality of the judicial branch, is exempted from mandatory representation by the Attorney General and ODOJ. *See* ORS 9.010 (3)-(4) (providing list of state statutes applicable to State Bar, further providing that other statutes applicable to state agencies not applicable to State Bar unless Bar expressly referenced); *cf* ORS 180.220 (not expressly including State Bar in list of entities subject to exclusive representation); *but see* ORS 9.555 (requiring notice to Attorney General when the Bar is involved in litigation as plaintiff or defendant).

Although the OSB is extremely well represented by private counsel, the Attorney General appreciates the opportunity to provide input in this matter as well. As the State's chief legal officer, the Attorney General has a strong interest in the administration of justice in the State of Oregon generally. She also has a strong interest in the quality and professionalism of the ODOJ lawyers she leads and the lawyers with whom the State litigates, as well as the work of the Bar to further those interests. Finally, and consistent with her role as the State's lawyer, the Attorney General has a strong institutional interest in defending the State's permissible policy choices, including its choice here to regulate lawyers via the mechanism of an integrated bar. The Attorney General is uniquely positioned to help present the State's overall institutional interests in this case.

Ultimately, however, the Attorney General respectfully suggests that the resolution of this case is bound by precedent, and should not long detain the Court. First, the OSB, as an arm of the State, is not subject to suit in Federal Court. This case cannot proceed further unless and until plaintiffs correct this threshold defect in their complaint. Second, even if the OSB were subject to suit in Federal Court, binding precedent from the U.S. Supreme Court holds that integrated bars are a permissible means for states like Oregon to regulate lawyers within their borders. Third, even if the Court accepts plaintiffs' invitation to reconsider that binding

Page 2 -    MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
          SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

precedent, it would not alter the result. Plaintiffs concede that the State has a compelling state interest in regulating lawyers and improving the profession. Their suggestion that it would be simple and less burdensome to plaintiffs for the state to simply adopt the licensing structure it uses for doctors is misplaced. Plaintiffs' proposal fails to take into account separation of powers concerns, and appears to be premised on the mistaken understanding that other state regulatory boards do not engage in speech. While the Attorney General does not dispute that some alternative regulatory arrangement could be designed if required, the change would not be as simple as plaintiffs suggest.

Plaintiffs' overall argument ultimately fails to adequately account for lawyers' special role in the administration of justice. At the end of the day, the Supreme Court has repeatedly recognized that the State's compelling interests in regulating lawyers readily justifies any First Amendment burden associated with an integrated bar.[2] There is no adequate basis for the Court to depart from that precedent, and no basis for the Court to invalidate the permissible policy choice of the Oregon Legislature and Oregon Judicial Branch to use an integrated bar for the statewide regulation of lawyers in Oregon.

## II. This case should be dismissed on Eleventh Amendment Immunity grounds.

The Attorney General agrees with the OSB that this matter should be dismissed based on Eleventh Amendment Immunity. Although in some respects the Bar, an instrumentality of the judicial branch, looks different from standard executive branch agencies, the OSB is "a creature of the state, not of any local government, and it has statewide responsibilities." *State ex rel. Frohnmayer v. Or. State Bar*, 91 Or. App. 690, 694 (1988), *aff'd*, 307 Or. 304 (1989) (holding that the Bar was subject to the Oregon public records law). For purposes of the Eleventh Amendment immunity analysis, OSB is an arm of the State, as discussed in OSB's motion to

---

[2] The Supreme Court has defined integrated state bar organizations like that that exists in Oregon as "an association of attorneys in which membership and dues are required as a condition of practicing law in a State." *Keller v. State Bar of California*, 496 U.S. 1, 5 (1990).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

dismiss (ECF No. 14)[3] and consistent with the numerous decisions from this district and the Ninth Circuit so holding. *See Paulson v. Or. State Bar*, 609 F. App'x 511, 512 (9th Cir. 2015) (affirming dismissal of claims against Oregon State Bar on Eleventh Amendment Immunity grounds); *Hartfield v. Or. State Bar*, Case No. 3:16-cv-00068-ST, 2016 WL 9225978, at *1 (D. Or. Jan. 15, 2016), *report and recommendation adopted*, No. 3:16-CV-00068-ST, 2016 WL 9226386 (D. Or. Feb. 16, 2016) ("[C]laims against the OSB in federal court are barred by the Eleventh Amendment."), *aff'd*, 671 F. App'x 456 (9th Cir. 2016); *Modrall v. Or. State Bar*, No. 3:17-cv-00379-HZ, 2017 WL 1043285, at *3 (D. Or. Mar. 17, 2017) ("Plaintiff seeks to bring a claim against the OSB. His claim, even if properly stated, would be barred by the Eleventh Amendment."); *Coultas v. Payne*, Civ. No. 3:12-cv-1132-AC, 2012 WL 6725845, at *3 (D. Or. Nov. 27, 2012) ("the OSB is an arm of the State of Oregon and is entitled to Eleventh Amendment immunity") (internal quotations omitted), *report and recommendation adopted*, No. 3:12-cv-1132-AC, 2012 WL 6726247 (D. Or. Dec. 27, 2012); *Weidner v. Albertazzi*, Civ. No. 06-930-HO, 2006 WL 2987704, at *1 (D. Or. Oct. 13, 2006) ("In the absence of a waiver of Eleventh Amendment Immunity, the Oregon State Bar is immune from suit for damages in federal court."); *Erwin v. Oregon ex rel. Kitzhaber*, 231 F. Supp. 2d 1003, 1007 (D. Or. 2001) ("The Oregon State Bar is an arm of the State of Oregon and is entitled to immunity from suit in federal court as provided by the Eleventh Amendment to the United States Constitution."), *aff'd on other grounds sub nom. Erwin v. Oregon*, 43 F. App'x 122 (9th Cir. 2002).

### III. The Attorney General agrees with the OSB that *Janus* does not overrule *Keller* and *Lathrop*, and integrated bars do not violate the First Amendment.

The Attorney General agrees with the OSB that the First Amendment does not prohibit the State from using an integrated bar as the mechanism to regulate and continuously improve

---

[3] For the same reasons, as an arm of the State, OSB is not a "person" for purposes of 42 U.S.C. § 1983, and plaintiffs' claims fail for that additional reason. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64, 71 (1989).

Page 4 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
    SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the legal profession in Oregon. There is thus no basis for the federal courts to interfere with the State's permissible policy choice on how to accomplish this compelling State interest.

In *Keller v. State Bar of California*, 496 U.S. 1 (1990), the Supreme Court held that compulsory membership and mandatory dues in an integrated bar as a condition of practicing law in a state do not violate the First Amendment. The Court explained that such requirements were "justified by the State's interest in regulating the legal profession and improving the quality of legal services," and that it was "entirely appropriate that all of the lawyers who derive benefit from the unique status of being among those admitted to practice before the courts should be called upon to pay a fair share of the cost of the professional involvement in this effort." *Id*. at 12-13.

Drawing on compelled subsidy cases from the labor union context,[4] however, the Court in *Keller* held that the First Amendment did restrict how integrated bars could use member dues. *Id*. at 13-14, citing *Ellis v. Brotherhood of Ry., Airline and S.S. Clerks, Freight Handlers, Express and Station Emps.*, 466 U.S. 435 (1984), and *Abood v. Detroit Bd. Of Educ.*, 431 U.S. 209 (1977), *overruled by Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018). Namely, *Keller* explained that "[t]he State Bar may . . . constitutionally fund activities germane to . . . [regulating the legal profession and improving the quality of legal services] out of the mandatory dues of all members. It may not, however, in such manner fund activities of an ideological nature which fall outside of those areas of activity." *Keller*, 496 U.S. at 14. That is, *Keller* stands for the proposition that compulsory bar membership is permissible, but that mandatory lawyer dues may only be used only for speech germane to the regulatory interests that justify the compelled Bar membership.

---

[4] As discussed below, in section IV-b, in deciding to apply the labor union cases, the *Keller* Court reversed the Supreme Court of California's conclusion that the State Bar was a state agency qua state agency, which, like all other state agencies, was not limited by the First Amendment in what it could say with fees collected.

Page 5 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Leaving aside for the moment the parties' factual dispute over whether or not certain bar expenditures (i.e. the statement in a Bar publication and other largely unspecified activities) are "germane," the *Keller* case establishes that, in general, integrated bars are a permissible way for a State like Oregon to choose to regulate lawyers. Plaintiffs point to no case expressly overruling this binding precedent. *Keller* controls the outcome here.

Instead of pointing to a case overruling *Keller*, plaintiffs ask this court to dramatically extend a recent Supreme Court case, *Janus v. American Federation of State, County and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018). But that case does not overrule *Keller*, and does not provide a basis for this court to depart from its binding precedent. *Janus* invalidated, on First Amendment grounds, requirements that non-members of a public employee union pay "agency fees" to support the union's collective bargaining activities. The Court held that such requirements were invalid because the asserted governmental interests in "labor peace," "eliminating free riders," and "bargaining with an adequately funded exclusive bargaining agent" were not sufficient to justify the First Amendment burden imposed by agency fee requirements, or, even if sufficient, those interests could be "achieved through means significantly less restrictive[.]" *Janus*, 138 S. Ct. at 2465-66, 2477 (internal quotation marks omitted). In so doing, the *Janus* Court overruled its earlier decision, *Abood*, 431 U.S. 209 (1977), which had reached the opposite conclusion regarding agency fees.

But the fact that the current Supreme Court concluded that Illinois' state interests are not sufficient to justify "agency fees" in the public employee union context does not mean that the Supreme Court has – or would – reach a similar conclusion with respect to integrated bars. Indeed, the Supreme Court itself has rejected that proposition.

In *Harris v. Quinn*, 134 S. Ct. 2618 (2014), the Court invalidated agency fees in the context of a union representing homecare workers paid by the state, finding that the agency fees requirement in that context did not "serve a compelling state interest that cannot be achieved through means significantly less restrictive." *Id.* at 2639 (citation and internal ellipses omitted).

Page 6 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

In the course of so doing, the Supreme Court expressly considered and rejected arguments that its decision limiting *Abood* to "full-fledged state employees" would undermine *Keller*. *Harris*, 134 S. Ct. at 2638, 2643-44 ("Respondents contend . . . [that this case] will call into question our decisions in *Keller* . . . Respondents are mistaken."). Indeed, the *Harris* Court reaffirmed its support of the State's strong interests in "regulating the legal profession and improving the quality of legal services [and] allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices." *Id*. at 2644.

*Harris*' reaffirmation of the Court's belief that the State has a strong interest in regulating lawyers is consistent with the Court's precedent recognizing the State's interests in regulating professionals in general[5] and lawyers in particular. In *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 459–60 (1978), for example, a case upholding state restrictions on lawyers' advertising, the Court observed that the State has a particularly strong interest in regulating lawyers:

> In addition to its general interest in protecting consumers and regulating commercial transactions, the State bears a special responsibility for maintaining standards among members of the licensed professions. *The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts.* . . . While lawyers act in part as self-employed businessmen, they also act as trusted agents of their clients, and as assistants to the court in search of a just solution to disputes.

*Id*. (citations omitted, emphasis added).

---

[5] Indeed, as far back as 1910, the Supreme Court observed that "[i]t is too well settled to require discussion at this day that the police power of the states extends to regulation of certain trades and callings, particularly those which closely concern public health." *Watson v. Maryland*, 218 U.S. 173, 176 (1910); *see also Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) ("We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions."). As recently as this year, the Supreme Court has recognized that "States may regulate professional conduct, even though that conduct incidentally involves speech," and may also regulate commercial speech by professionals. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018) (going on to strike down as impermissible compelled speech a state law requirement that private crisis pregnancy centers post notices advising clients of their right to seek abortions).

Page 7 -    MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
        SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Janus* does nothing to undermine the Court's longstanding recognition of the State's powerful interest in regulating lawyers, or its endorsement of integrated bars as one permissible means of carrying out that interest.[6] The Court should decline plaintiffs' invitation to extend *Janus* beyond its proper labor context.

### IV.  The State has broad authority to regulate professionals, and recognized authority to do so even where it impinges on speech.

In light of the above-cited legal precedent, plaintiffs wisely "do not deny that the State of Oregon has a compelling state interest in regulating the legal profession and improving the quality of legal services." Pls' Mem. in Supp. of Mot. for Summ. J., at 9. Instead, plaintiffs contend that the State could achieve its concededly compelling state interest through other means, and suggest that the State could simply adopt a licensing system like that used to regulate doctors in Oregon. *Id.* Plaintiffs contend that "a licensing system where the licensing agency does not engage in political or ideological speech" could accomplish the State's goals with respect to lawyers, and would be less restrictive. *Id*. at 10.

In addition to the arguments presented by the State Bar, the Attorney General wishes to make two points in response to this assertion. First, the regulation of lawyers is a responsibility assigned to the judicial branch by the Oregon Constitution, making the model used for other licensing agencies a poor fit. Second, the free speech clause of the First Amendment does not restrict what state licensing agencies may say; accordingly, plaintiffs' assumption that a state agency would be barred from engaging in speech that they consider "political or ideological" is unfounded to the extent it is based on the First Amendment.

---

[6] Nor is *Keller* undermined by the Supreme Court's recent action in *Fleck v. Wetch*, Case No. 17-866. In that case, on December 3, 2018, the Supreme Court granted certiorari and, in a one-paragraph order, vacated and remanded an Eighth Circuit decision upholding integrated bars with directions to reconsider it in light of *Janus*. The Eighth Circuit's decision had predated *Janus*, and the petition raised questions regarding *Janus*' impact. It is thus unremarkable that the Supreme Court opted to resolve the petition by directing the Eighth Circuit to consider the question in the first instance; the Supreme Court's action does not tell us how the Supreme Court would ultimately come out on the question.

Page 8 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
  SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

### a. The Medical Board model is a poor fit for an instrumentality of the judicial branch.

In Oregon, the State regulates many professions. These regulations are generally enforced and carried out through the State's system of boards and commissions. The Oregon Medical Board (Medical Board) provides an example of this system.

The Oregon Medical Board is the State regulatory entity responsible for administering the Medical Practice Act and establishing the rules and regulations pertaining to the practice of medicine in Oregon. The Board licenses Medical Doctors, Doctors of Osteopathic Medicine, Podiatric Physicians, Physician Assistants, and Acupuncturists; investigates complaints against licensees and takes disciplinary action when a violation of the Medical Practice Act occurs; monitors licensees who have come under disciplinary action; and works to rehabilitate and educate licensees whenever appropriate. *See generally* ORS § 677.265. The Board is also responsible for the scope of practice for First Responders and Emergency Medical Technicians. Oregon Revised Statutes Chapter 677 provides detailed statutory guidance, and also sets forth the agency structure and authorities for Board. The Board is required to make annual reports to the legislature regarding any rulemaking activity it engages in. ORS § 183.403.

The Oregon Medical Board works under an oversight board that makes all final decisions on the regulation of the practice of medicine in Oregon and oversees the work of the Medical Board's staff. Statutes set forth the necessary qualifications of the oversight board's members. ORS § 677.235(1) (a)-(e). Each member of the oversight board is appointed by the Oregon Governor, confirmed by the Oregon Senate, and serves at the pleasure of the Governor. ORS § 677.235.

Although the Medical Board's budget is set by the Oregon legislature, it is not funded through general fund dollars. Instead, the Medical Board sets licensing and registration fees at a level sufficient to fund the budget limitation set by the Legislature, subject to approval by the State's Department of Administrative Services. ORS § 677.265 (1) (a); *see also* 2017-19

Page 9 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
        SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Legislatively Adopted Budget Detailed Analysis, at 301 (2017), *available at* https://www.oregonlegislature.gov/lfo/Documents/2017-19%20LAB%20Detailed%20Analysis.pdf (last visited Dec. 3, 2018) (The Board "receives 98% of its revenue from licensure and registration fees. Other miscellaneous revenue includes the sale of lists and directories, and fines or forfeitures imposed as disciplinary measures."). Currently, active medical doctors must generally pay $375 for an initial license application and $506 in registration fees every two years in order to maintain their license. *See* OAR § 847-005-0005(1). Thus, like the Bar, the Medical Board's activities are funded by the professionals it licenses and regulates.

As the Medical Board example illustrates, the general regulatory scheme for professionals involves governing boards and commissions composed largely of members of the regulated profession, overseen (via appointment and removal authority of governing boards, express and often specific statutory authorities, reporting requirements, and budgetary control) by the executive and legislative branches of government. This executive and legislative branch oversight model, however, is a poor fit for the regulation of lawyers because regulation of lawyers is, under Oregon's Constitution and statutes, the responsibility of the judicial branch – not the executive and legislative branches. *See* OSB's Motion to Dismiss, at 8, citing *Ramstead v. Morgan*, 219 Or. 383, 399 (1959), and *Sadler v. Or. State Bar*, 275 Or. 279, 281-294 (1976); *see also* ORS § 9.010(2) ("The Oregon State Bar is a public corporation and an instrumentality of the Judicial Department of the government of the State of Oregon.").

The Oregon Supreme Court has said that the Oregon Constitution's "fundamental genius . . . may be found in the creation and separation of three distinct branches of government." *Rooney v. Kulongoski*, 322 Or. 15, 28 (1995). The Court has interpreted the state constitution's Separation of Powers clause (Article III, section 1) to "not require or intend an absolute separation between the departments[7] of government." *Id.* However, a separation of powers

---
[7] Until recently, the separation of powers clause referred to the branches of government as "departments."

Page 10 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
    SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

problem may arise where (1) "one department of government has 'unduly burdened' the actions of another department in an area of responsibility or authority committed to that other department" or (2) where "one department is performing the functions committed to another department." *Id*. The purpose of these inquiries, and the separation of powers protections, is to "avoid the potential for coercive influence between governmental departments" and "avoid the potential for concentration of separate powers in one department." *Id*.

In Oregon, where regulation of lawyers is indisputably a function of the judicial branch and in light of the State's separation of powers requirements, there is significant question as to whether it would be appropriate or permissible to adopt a governance structure for lawyers that simply mirrors that applicable to the professionals regulated by the other branches of government. While the Attorney General does not contend that the Oregon Constitution would preclude a hypothetical alternative licensing scheme *of some kind* for lawyers, any such alternative scheme would need to be designed and structured with due respect for the important principles of separation of powers outlined above, and would need to account for the specialized nature of the judicial branch as regulator. Plaintiffs' suggestion that the state could simply adopt the medical board model is thus an oversimplification.

### b. There is no First Amendment bar to a state agency qua agency engaging in political or ideological speech.

Plaintiffs' contention that a more traditional licensing agency – that is, a regulatory authority with less licensee control and more government control – would be less restrictive because it necessarily would not engage in political or ideological speech is also misplaced. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-69 (2009); *see also Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 559 (2005) ("Our compelled-subsidy cases have consistently respected the principle that compelled support of a private association is fundamentally different from compelled support of government. Compelled support of

Page 11 - MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

government—even those programs of government one does not approve—is of course perfectly constitutional, as every taxpayer must attest.") (citations omitted).

Indeed, as the California Supreme Court put it in its ruling in *Keller*, "a governmental agency may use unrestricted revenue, whether derived from taxes, dues, fees, tolls, tuition, donation, or other sources, for any purposes within its authority." *Keller v. State Bar*, 47 Cal. 3d 1152, 1167 (1989), *rev'd sub nom. Keller v. State Bar of California*, 496 U.S. 1 (1990).[8] *See also Johanns*, 544 U.S. at 562 ("The compelled-*subsidy* analysis is altogether unaffected by whether the funds . . . are raised by general taxes or through a targeted assessment.") (emphasis in original). Thus, while plaintiffs are technically correct that their First Amendment "compelled subsidy" concerns would be eliminated if the State chose to regulate through a more traditional licensing agency, that is only because the First Amendment does not apply at all in that context. It is not because licensing agencies do not speak.

Indeed, licensing agencies speak routinely. In Oregon, for example, licensing agencies are authorized to propose legislation in consultation with the Governor. *See* OR. CONST. art. V, § 11; ORS §§ 171.130 - .133; ORS § 173.130(2); *see also, e.g.*, SB. 60 (2017) (at the request of Governor Kate Brown for the Oregon Medical Board). They also make presentations to the legislature. *See, e.g.*, Exhibit 4, Joint Subcommittee on Human Services, HB 5023, Mar. 7, 2017 (Oregon Medical Board Budget Presentation to Joint Ways and Means Subcommittee on Human Services), *available at* https://olis.leg.state.or.us/liz/2017R1/Downloads/CommitteeMeeting Document/102877 (last visited Dec. 3, 2018). The agency also strives to provide outreach and education to the public and licensees regarding the resources available to patients, licensees, and the general public. *See* Oregon Medical Board Strategic Plan, at 5 (Oct. 2016), https://www.oregon.gov/omb/board/Documents/strategic-plan.pdf (last visited Dec. 3, 2018). As

---

[8] The California Supreme Court upheld the integrated bar on the grounds that the bar was, in fact, a state agency, rejecting the analogy to labor unions that other courts had adopted. *See Keller*, 47 Cal. 3d at 1166-67. The U.S. Supreme Court, of course, subsequently reversed the California Supreme Court, concluding that the California bar was not a state agency and the labor union analogy was more appropriate in determining how an integrated bar could use its dues. *Keller*, 496 U.S. at 11-12.

Page 12 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
    SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

part of that effort, the Medical Board publishes a quarterly newsletter sent to all licensees regarding a variety of topics. The Summer 2018 issue, for example, provides updates on board activities, introduces a new board member, advises licensees of a wellness program and certain relevant regulatory changes, articles on Alzheimer's disease and dementia care, and an article celebrating the legacy of a doctor and his numerous contributions to the profession and to civil rights. Oregon Medical Board Report, Vol. 130, No. 3 (Summer 2018), *available at* https://www.oregon.gov/OMB/newsletter/Summer%202018.pdf .

      **c.**      **Lawyers occupy a special role in Oregon.**

To be a lawyer in Oregon is to be an "officer of the court." ORS § 9.010. The highest courts in both the state and federal judicial systems have long recognized that, consistent with their critical role in the administration of justice, lawyers' responsibilities (and the State's interest when it comes to their regulation) extend beyond mere professional competence. As a 1922 Oregon Supreme Court case explained, a lawyer

> must not only be learned in the law, but possess a character of honesty, probity and good demeanor . . . Not only do his clients repose trust in his integrity, but as an officer of the court, in the matter of administering justice, his privileges and duties are such as to constantly call for the exercise of fidelity, both to his client, and to the state. A lawyer without good character is not only a reproach to his profession, but he brings into public distrust, and is a very menace to, the administration of justice itself.

*State ex rel. Young v. Edmunson*, 103 Or. 243, 250 (1922) *citing Underwood v. Commonwealth*, 105 S.W. 151 (Ky. 1907).

This special role and responsibility for lawyers supports the compelling state interest in regulating and continually improving lawyers and the administration of justice. The State of Oregon has made a policy choice to advance that interest by requiring lawyers, as officers of the court, to take some measure of ownership of their own governance by becoming formal members of the Oregon State Bar. Oregon's policy choice respects the separation of powers considerations inherent in designing a regulatory role for the judicial branch, and is appropriate in light of the special role lawyers play in the administration of justice in Oregon.

Page 13 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
    SW2/crr/9306348-v3A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## V. Conclusion

Federal courts should not lightly direct the State to engage in a significant reorganization of its regulatory scheme. While the federal courts should always give due deference to the state's policy choices, that is particularly true where, as here, the State's authority to regulate professionals generally is unquestioned, its interest is admitted by Plaintiffs to be compelling and the Supreme Court has approved the precise mechanism the duly elected legislature of the State has chosen to conduct that regulation.

For the reasons outlined above, Oregon's policy choice to use an integrated bar rather than a different form of licensing authority to regulate lawyers within its borders is appropriate and desirable in light their special role in the administration of justice and the fact that their regulation is the province of the judicial branch of government. What is most important for purposes of this case, however, is that Oregon's policy choice is plainly permissible under binding Supreme Court precedent. And that, for this Court, should be the end of the inquiry.

The Attorney General respectfully requests that the Court enter judgment for the Oregon State Bar.

DATED December __6__, 2018.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


*s/ Sarah Weston*
SARAH WESTON #085083
Assistant Attorney General
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
Sarah.Weston@doj.state.or.us
Of Attorneys for Amicus Curiae

Page 14 -   MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM
    SW2/crr/9306348-v3A
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# CERTIFICATE OF SERVICE

I certify that on December  6 , 2018, I served the foregoing MEMORANDUM OF AMICUS CURIAE OREGON ATTORNEY GENERAL ELLEN ROSENBLUM upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Michael L. Spencer<br>403 Main St.<br>Klamath Falls, OR 97601<br>    *Of Attorneys for Plaintiffs* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>  X   E-SERVE |
| Steven M. Wilker<br>Meagan K. Houlihan<br>Tonkon Torp LLP<br>1600 Pioneer Tower<br>888 SW Fifth Ave., Suite 1600<br>Portland, OR 97204<br>    *Of Attorneys for Defendant Oregon*<br>    *State Bar* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>  X   E-SERVE |
| Alexander M. Naito<br>Elisa J. Dozono<br>Miller Nash Graham & Dunn LLP<br>111 SW Fifth Ave., Suite 3400<br>Portland, OR 97204<br>    *Of Attorneys for Defendant Oregon*<br>    *State Bar* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>  X   E-SERVE |
| W. Michael Gillette<br>Schwabe Williamson & Wyatt<br>1211 SW Fifth Ave., Suite 1900<br>Portland, OR 97204<br>    *Of Attorneys for Defendant for Oregon*<br>    *State Bar* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>  X   E-SERVE |

    *s/ Sarah Weston*
SARAH WESTON #085083
Assistant Attorney General
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
Sarah.Weston@doj.state.or.us
Of Attorneys for Amicus Curiae

Page 1 -   CERTIFICATE OF SERVICE
            SW2/crr/9172824-v1B

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000