**Steven M. Wilker**, OSB #911882
  Direct Dial: 503.802.2040
  Email: steven.wilker@tonkon.com
**Megan Houlihan**, OSB No. 161273
  Direct Dial: 503-802-2184
  Direct Fax: 503-274-8779
  E-mail: meg.houlihan@tonkon.com
Tonkon Torp LLP
888 SW Fifth Avenue
Suite 1600
Portland, OR 97204

        Attorneys for Defendants

*See Signature Page for Additional Counsel*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DIANE L. GRUBER, et al., | Civil No. 3:18-cv-01591-JR |
| Plaintiffs, | |
| v. | **DEFENDANTS' FRCP 12(b)(1) AND 12(b)(6) MOTIONS TO DISMISS FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW** |
| OREGON STATE BAR, et al., | |
| Defendants. | **(REQUEST FOR ORAL ARGUMENT)** |

## TABLE OF CONTENTS

CERTIFICATION OF COMPLIANCE WITH LR 7-1(a)(1) ........................................... 1

MOTIONS ....................................................................................................................... 1

MEMORANDUM OF LAW ............................................................................................ 1

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

III.    ARGUMENT ........................................................................................................ 4

    1.     The Court Lacks Jurisdiction Over Plaintiffs' Claims Against the Bar ................ 5

        A.     Standards for Dismissal Under Rule 12(b)(1) ............................................ 5

        B.     The Bar Is Immune From Suit as an Arm of the State ............................... 6

            a.     A Money Judgment Would Not Be Satisfied Out of State Funds .. 7

            b.     The Bar Performs the Central State Government Function of
Regulating Attorneys ................................................................... 7

            c.     The Bar May Sue and Be Sued in Some Capacities ...................... 9

            d.     The Bar Takes Some Property for the Benefit of the State and
Subject to Conditions .................................................................... 9

            e.     The Bar Has the Corporate Status of a State Agent ..................... 10

    2.     Plaintiffs Fail to State a Claim ............................................................. 11

        A.     Dismissal Under Rule 12(b)(6) ............................................................. 11

        B.     Supreme Court Precedent Forecloses Plaintiffs' Claim That Mandatary
Membership in the Bar and Compulsory Membership Fees Violate Their
First Amendment Rights ....................................................................... 12

        C.     Plaintiffs' Fail to Plead That They Have Been Compelled to Pay for
Political or Ideological Activities that Are Not Germane to a Permissible
Purpose ................................................................................................. 14

            a.     The April Statement Serves the Bar's Mission and the State's
Compelling Interest in Promoting Access to Justice, Regulating the
Legal Profession, and Improving the Quality of Legal Services .. 14

            b.     Under the Bar's Bylaws, Plaintiffs Had the Opportunity to Reclaim
Fees Used to Fund Any Non-Germane Activity ........................... 17

            c.     Plaintiffs' Other Allegations Are Too Conclusory to State a
Claim ........................................................................................... 20

IV.    CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abood v. Detroit Board of Education,*
431 U.S. 209 (1977).................................................................................................13, 14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................11, 12, 20

*Belanger v. Madera Unified Sch. Dist.,*
963 F.2d 248 (9th Cir. 1992) ..................................................................................9, 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................12, 20

*Bonin v. Calderon,*
59 F.3d 815 (9th Cir. 1995) .........................................................................................21

*Buckley v. City of Redding, Cal.,*
66 F.3d 188 (9th Cir. 1995) .........................................................................................12

*In re Century Aluminum Co. Sec. Litig.,*
729 F.3d 1104 (9th Cir. 2013) ..............................................................................11, 12

*Chicago Teachers Union v. Hudson,*
475 U.S. 292 (1986)........................................................................................................19

*Crosetto v. State Bar of Wis.,*
12 F.3d 1396 (7th Cir. 1993) .........................................................................................7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014) ........................................................................................11

*Erwin v. Or. ex rel. Kitzhaber,*
231 F. Supp. 2d 1003 (D. Or. 2001), *aff'd sub nom. Erwin v. Oregon*, 43 F.
App'x 122 (9th Cir. 2002) .............................................................................................10

*Eugster v. Wash. State Bar Assoc.,*
2015 WL 5175722 (W.D. Wash. Sept. 3, 2015), *aff'd*, 684 F. App'x 618 (9th
Cir. 2017)................................................................................................................6, 10

*Fed. Mar. Comm'n v. S.C. State Ports Auth.,*
535 U.S. 743 (2002).................................................................................................6, 7, 10

*State ex rel. Frohnmayer v. Or. State Bar,*
767 P.2d 893 (Or. 1989) ...............................................................................................10

*Gardner v. State Bar of Nevada,*
  284 F.3d 1040 (9th Cir. 2002) ...............................................................15, 16, 17

*Gibson v. The Fla. Bar [Gibson I],*
  798 F.2d 1564 (11th Cir. 1986) ......................................................................19

*Gibson v. The Fla. Bar [Gibson II],*
  906 F.2d 624 (11th Cir. 1990) ........................................................................19

*Ginter v. State Bar of Nev.,*
  625 F.2d 829 (9th Cir. 1980) (per curiam)......................................................6

*In re Glover,*
  68 P.2d 766 (Or. 1937) ....................................................................................2

*Hafer v. Melo,*
  502 U.S. 21 (1991)..........................................................................................11

*Harris v. Quinn,*
  —U.S.—, 134 S. Ct. 2618 (2014)..................................................................14

*Hirsch v. Justices of Supreme Court of Cal.,*
  67 F.3d 708 (9th Cir. 1995) ........................................................................6, 10

*Janus,* 138 S. Ct. at 2478, 2486 .......................................................................13, 14

*Keller v. State Bar of California,*
  496 U.S. 1 (1990).....................................................2, 13, 14, 15, 16, 17, 19, 20

*Kingstad v. State Bar of Wis.,*
  622 F.3d 708 (7th Cir. 2010) ......................................................................7, 16

*Lathrop v. Donohue,*
  367 U.S. 820 (1961).....................................................................................12, 13

*Lupert v. Cal. State Bar,*
  761 F.2d 1325 (9th Cir. 1985) .........................................................................6

*Mitchell v. Los Angeles Community College District,*
  *861 F.2d 198, 201 (9th Cir. 1988)*.....................................................6, 7, 8, 9, 10

*Morrow v. State Bar of Cal.,*
  188 F.3d 1174 (9th Cir. 1999) ........................................................................19

*Native Vill. of Noatak v. Blatchford,*
  38 F.3d 1505 (9th Cir. 1994) ..........................................................................11

*O'Connor v. State of Nev.,*
  686 F.2d 749, 750 (9th Cir. 1982) (per curiam)..........................................9, 10

*Ohralik v. Ohio State Bar Assoc.*,
436 U.S. 447 (1978)...................................................................................................1

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)....................................................................................................6

*Estate of Pond v. Oregon*,
322 F. Supp. 2d 1161 (D. Or. 2004) ........................................................................9

*Ramstead v. Morgan*,
347 P.2d 594 (Or. 1959) ......................................................................................8, 17

*Rounds v. Or. State Bd. of Higher Educ.*,
166 F.3d 1032 (9th Cir. 1999) ..................................................................................8

*Sadler v. Or. State Bar*,
550 P.2d 1218 (Or. 1976) ..........................................................................................8

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ..................................................................................5

*Sato v. Orange Cty. Dep't of Educ.*,
861 F.3d 923 (9th Cir.), *cert. denied*, 138 S. Ct. 459 (2017)...........................5, 6, 9

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003) ..................................................................................6

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 322 (2007)......................................................................................4, 5

*Thiel v. State Bar of Wis.*,
94 F.3d 399, 401 (7th Cir. 1996), overruled on other grounds by *Kingstad v.
State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010) ......................................................7

*United States v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) ..................................................................................14

*Wilder v. Va. Hosp. Ass'n*,
496 U.S. 498 (1990)................................................................................................12

*Ex parte Young*,
209 U.S. 123 (1908)................................................................................................11

**Statutes**

42 U.S.C. § 1983.................................................................................4, 11, 12, 13, 20

ORS §§ 9.005–9.757 ......................................................................................2

ORS § 9.005(7) ............................................................................................8

ORS § 9.010(2) ........................................................................................2, 10

ORS § 9.010(5) ............................................................................................9

ORS § 9.010(6) ........................................................................................2, 7

ORS § 9.042 ................................................................................................8

ORS § 9.080 ............................................................................................3, 8

ORS § 9.080(1) ............................................................................................3

ORS § 9.100 ................................................................................................8

ORS § 9.114 ............................................................................................3, 8

ORS § 9.160 ................................................................................................2

ORS § 9.191 ................................................................................................2

ORS § 9.200 ................................................................................................2

ORS § 9.210 ............................................................................................3, 8

ORS § 9.490 ............................................................................................3, 8

ORS § 9.532 ................................................................................................8

ORS § 9.536 ................................................................................................8

ORS § 9.542 ................................................................................................8

ORS § 9.572(1) ..........................................................................................10

ORS § 9.577 ..............................................................................................10

ORS § 98.304 ..............................................................................................9

ORS § 98.386(2) ......................................................................................9, 10

**Other Authorities**

Fed. R. Civ. P. 8(a) ...................................................................................20

Fed. R. Civ. P. 12(h)(3)................................................................................5

Fed. R. Civ. Pro. 12(b)(1) ............................................................................1, 5

Fed. R. Civ. Pro. 12(b)(6) ..........................................................................1, 11

Fed. R. Evid 201 ...............................................................................................4

Fed. R. Evid. 201(b) .........................................................................................5

Oregon Rule of Appellate Procedure 11.25 .....................................................8

Oregon State Bar, *Bylaws*, available at
    https://www.osbar.org/_docs/rulesregs/bylaws.pdf ...................................4

Oregon State Bar Bylaws § 11.1 .......................................................................3

Oregon State Bar Bylaws, § 12.1 ....................................................................17

Oregon State Bar Bylaws § 12.6 ...............................................................18, 19

Oregon State Bar Bylaws § 18.100 ..................................................................8

Oregon State Bar Bylaws § 28.1 ......................................................................8

Oregon State Bar Bylaws § 28.6 ......................................................................8

Oregon State Bar Bylaws § 7.202 ....................................................................8

Oregon State Bar; *Legal Services Program*, https://www.osbar.org/lsp (last visited
    October 16, 2018) .......................................................................................3

Oregon State Bar, *Mission Statement*, https://www.osbar.org/_docs/resources
    /OSBMissionStatement.pdf. (last visited October 16, 2018)...................2, 5

Oregon State Bar, *OSB Bulletin Archives*, https://www.osbar.org/publications
    /bulletin/archive.html (last visited October 18, 2018) ............................3

Oregon State Bar Rules of Procedure 1.1 .........................................................8

Oregon State Bar Rules of Procedure § 2.3 ...................................................3, 8

Oregon State Bar Rules of Procedure § 2.4 ......................................................8

Oregon State Bar Rules of Procedure § 12.1 ....................................................8

Oregon State Bar, *Volunteer Opportunities*, https://www.osbar.org/probono
    /VolunteerOpportunities.html (last visited October 16, 2018) .................3

U.S. Const., amend. I ..............................................1, 12, 13, 14, 16, 17, 20

U.S. Const., amend. XI ................................................................................2, 4, 6, 9, 11

U.S. Const., amend. XIV ..............................................................................1, 12, 14

## CERTIFICATION OF COMPLIANCE WITH LR 7-1(A)(1)

Counsel for Defendants Oregon State Bar ("Bar"), Christine Costantino,[1] and Helen Hierschbiel (collectively, "Defendants") certify that the parties made a good-faith effort to resolve the dispute that is the subject of these motions and have been unable to do so.

## MOTIONS

Defendants move to dismiss this action with prejudice under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Although it is clear under controlling precedent that Plaintiffs have failed to state a claim against any of Defendants and cannot cure the defects in their complaint, it is also apparent that this Court lacks subject matter jurisdiction over this dispute with regard to the Bar. Accordingly, the Bar moves the Court for an order dismissing the case against it with prejudice for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Additionally, all Defendants move for dismissal with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## MEMORANDUM OF LAW

### I.    INTRODUCTION

The Oregon State Bar regulates the practice of law in Oregon, helping ensure that lawyers meet the high ethical standards essential to their role "as assistants to the court in search of a just solution to disputes." *Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447, 460 (1978). Plaintiffs, Diane Gruber and Mark Runnels, are two members of the Bar. They claim that the Bar and its officers violated Plaintiffs' First and Fourteenth Amendment rights by requiring them to become members of the Bar and pay membership dues as a condition of practicing law in Oregon. Plaintiffs further claim that the Bar and its officers violated their constitutional rights by using their membership fees for political and ideological purposes with which they disagree, such as publishing a statement against white nationalism and the normalization of violence.

/ / /

---

[1] Plaintiffs misspelled Ms. Costantino's name in the caption of their First Amended Complaint. Defendants use the correct spelling of her name.

Plaintiffs filed their original complaint on August 29, 2018.  (Dkt. No. 1.)  The Bar moved to dismiss the complaint on October 22, 2018.  (Dkt. No. 14.)  After the parties fully briefed the motions to dismiss as well as Plaintiffs' motion for partial summary judgment, Plaintiffs moved to amend the complaint in light of the Bar's Eleventh Amendment argument. (*See* Dkt. Nos. 17–21, 28–32, 37.)  The Court granted Plaintiffs' motion, and Plaintiffs filed their first amended complaint ("FAC") on January 3, 2019.  (Dkt. Nos. 38–39.)

The FAC adds two defendants:  Christine Costantino, the President of the Bar, and Helen Hierschbiel, the Bar's Chief Executive Officer (collectively "Individual Defendants").  (FAC ¶¶ 3–4.)  The remainder of the FAC remains the same as the original complaint, complete with the original complaint's errors of law and logic.  Defendants move to dismiss the FAC on the two grounds argued in the first motions to dismiss:  (1) the Court lacks subject matter jurisdiction over the Bar because it serves as an arm of the state and is therefore immune under the Eleventh Amendment; and (2) Plaintiffs fail to state a claim against all Defendants.

## II.     BACKGROUND

The Oregon legislature created the Bar in 1935 as part of the State Bar Act.  *See* Or. Rev. Stat. ("ORS") §§ 9.005–9.757; *In re Glover*, 68 P.2d 766, 768 (Or. 1937).  The Act makes the Bar "a public corporation and an instrumentality of the Judicial Department of the government of the State of Oregon."  ORS § 9.010(2).  Every lawyer in Oregon must join the Bar and pay an annual membership fee.  *Id.* §§ 9.160; 9.191, 9.200.  Bar organizations, like Oregon's, that require membership and dues as a condition of practicing law in the state are known as "integrated bars."  *See Keller v. State Bar of Cal.*, 496 U.S. 1, 5 (1990).  The Bar's work is primarily funded by membership fees.  *See* ORS §§ 9.010(6); 9.191.

The Bar's mission "is to serve justice by promoting respect for the rule of law, by improving the quality of legal services, and by increasing access to justice."[2]  The Bar, through its Board of Governors, also has the statutory responsibility to advance "the science of

---

[2]      Oregon State Bar, *Mission Statement*, https://www.osbar.org/_docs/resources /OSBMissionStatement.pdf. (last visited October 16, 2018).

PAGE 2 –   DEFENDANTS' FRCP 12(b)(1) AND 12(b)(6) MOTIONS TO DISMISS FIRST
                  AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

jurisprudence and the improvement of the administration of justice" in Oregon.  ORS § 9.080(1).
The Bar carries out these duties in a variety of ways.  The Bar recommends rules for adoption by
the Oregon Supreme Court regarding standards for admission to the practice of law and rules of
professional conduct.  Subject to the Supreme Court's oversight, the Bar administers the attorney
disciplinary system.  *See* ORS §§ 9.080; 9.114; 9.210; 9.490; Or. State Bar R. P. ("B.R.") 2.3.
The Bar also administers programs designed to improve the quality of legal services provided by
Oregon lawyers and increase access to justice for Oregonians.[3]

To help keep members apprised of current events and legal trends, the Bar publishes a
monthly *Bulletin*.[4]  The Bar's Bylaws provide that the Bar's statements in the *Bulletin* "should be
germane to the law, lawyers, the practice of law, the courts and the judicial system, legal
education and the Bar in its role as a mandatory membership organization.  Communications,
other than permitted advertisements, should advance public understanding of the law, legal ethics
and the professionalism and collegiality of the bench and Bar."  Bylaws § 11.1.

In April 2018, the Bar published a volume of the Bulletin that included a "Statement on
White Nationalism and Normalization of Violence" ("April Statement").  (FAC ¶ 6.)  In the
April Statement, the Bar reassured members that, in the wake of violence in Charlottesville,
Virginia, and attacks on Portland's MAX train, the Bar "remain[ed] steadfastly committed to the
vision of a justice system that operates without discrimination and is fully accessible to all
Oregonians."  (FAC, Ex. 1.)  The Bar "unequivocally condemn[ed] these acts of violence," as
well as "the proliferation of speech that incites such violence," because the "climate of violence,
extremism and exclusion gravely threatens" the Bar's goals "of access to justice, the rule of law,

---

[3]     Consistent with this mission, the Bar's programs provide the public with general legal
information about common legal topics and seek to increase pro bono legal services available to
impoverished Oregonians, military families, and survivors of domestic violence. *See, e.g.*,
Oregon State Bar, *Volunteer Opportunities*, https://www.osbar.org/probono
/VolunteerOpportunities.html (last visited October 16, 2018); Oregon State Bar, *Legal Services
Program*, https://www.osbar.org/lsp (last visited October 16, 2018).

[4]     *See* Oregon State Bar, *OSB Bulletin Archives*, https://www.osbar.org/publications
/bulletin/archive.html (last visited October 18, 2018), for examples of the Bar's *Bulletin*.

PAGE 3 –   DEFENDANTS' FRCP 12(b)(1) AND 12(b)(6) MOTIONS TO DISMISS FIRST
                   AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

and a healthy and functional judicial system that equitably serves everyone." (Id.) The Bar

reminded members that lawyers are "stewards of the justice system" and that "it is up to us to

safeguard the rule of law and to ensure its fair and equitable administration." (Id.) The April

Statement ended with a pledge: "[W]e not only refuse to become accustomed to this climate, we

are intent on standing in support and solidarity with those historically marginalized,

underrepresented and vulnerable communities who feel voiceless within the Oregon legal

system." (Id.)

 Several months after the Bar published the April Statement, Plaintiffs filed their § 1983

lawsuit against the Bar for allegedly violating Plaintiffs' rights to freedom of association and

freedom of speech. Plaintiffs later amended the complaint to add Individual Defendants. In the

FAC, Plaintiffs request a declaratory judgment that compulsory membership in the Bar and

membership fees are unconstitutional. (FAC, Prayer ¶ A.) Plaintiffs also request that the Court

issue an order preventing the Bar and Individual Defendants from collecting mandatory

membership fees or requiring fees as a condition of practicing law in Oregon. (Id. ¶ B.) Finally,

Plaintiffs ask for an award of all the membership fees they have paid for the past two years or,

alternatively, an award of all dues that Defendants allegedly spent on political or ideological

activities. (Id. ¶¶ C–E.) Plaintiffs are not entitled to any of the relief they seek.

## III. ARGUMENT

 The Court should dismiss the complaint for two independent reasons. First, the Court

lacks jurisdiction over Plaintiffs' claims against the Bar because the Bar is immune from suit

under the Eleventh Amendment. Second, Plaintiffs fail to state a claim that any of Defendants

violated Plaintiffs' constitutional rights. The face of the FAC and judicially noticeable facts

establish that Defendants comply with the constitutional requirements set forth in Keller and

other binding authority. In ruling on these issues, the Court may consider the Bar's Bylaws,

Mission Statement, and the April Statement.[5] See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

---

[5] Pursuant to Federal Rule of Evidence 201, Defendants request that the Court take judicial
notice of the Bar's Bylaws, available at https://www.osbar.org/_docs/rulesregs/bylaws.pdf, and

551 U.S. 308, 322 (2007) (stating that courts may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice when ruling on a motion to dismiss).

1.    **The Court Lacks Jurisdiction Over Plaintiffs' Claims Against the Bar**

    A.    **Standards for Dismissal Under Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a case for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "[T]he court must dismiss the action" if it determines that the defendant has correctly identified a jurisdictional defect.  Fed. R. Civ. P. 12(h)(3).

A defendant's "jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*  To resolve a factual attack on jurisdiction, the "court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*

A sovereign immunity defense is "quasi-jurisdictional" in nature, and a defendant may raise it in either a Rule 12(b)(1) or 12(b)(6) motion.  *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir.), *cert. denied*, 138 S. Ct. 459 (2017).  Here, the Bar raises the sovereign immunity defense by way of a facial attack on the Court's jurisdiction under Rule 12(b)(1).

/ / /

/ / /

---

Mission Statement, available at https://www.osbar.org/about.html.  The Bylaws and Mission Statement are not subject to reasonable dispute because their content is generally known within the District of Oregon and can be accurately and readily determined from reliable online sources.  *See* Fed. R. Evid. 201(b).

### B.    The Bar Is Immune From Suit as an Arm of the State

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  It is now well established that the Eleventh Amendment also prevents a state and its agencies from being sued by the state's own citizens in federal court.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  However, for sovereign immunity to attach to a state agency, like the Bar, the agency must serve as "an arm of the state" rather than merely a local government entity.  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003).  Thus, the question before the Court is whether the Bar is an arm of the state.

To determine whether any agency is an arm of the state, courts within the Ninth Circuit look to the five factors articulated in *Mitchell v. Los Angeles Community College District*:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

861 F.2d 198, 201 (9th Cir. 1988).  Courts evaluate and weigh each factor in turn.  *See, e.g.*, *Sato*, 861 F.3d at 929–34.  However, courts must keep in mind the overarching purpose of the state sovereign immunity doctrine, which "is to accord States the dignity that is consistent with their status as sovereign entities."  *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

This Court is not the first court called upon to decide whether a bar organization within the Ninth Circuit is an arm of the state.  The question has arisen on numerous occasions, and courts have repeatedly answered in the affirmative.  *See Hirsch v. Justices of Supreme Court of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995); *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985); *Ginter v. State Bar of Nev.*, 625 F.2d 829, 830 (9th Cir. 1980) (per curiam).  Indeed, in an almost identical case, the U.S. District Court for the Western District of Washington held that Washington's bar organization qualified for sovereign immunity.  *See Eugster v. Wash. State Bar*

*Assoc.*, 2015 WL 5175722, at *9 (W.D. Wash. Sept. 3, 2015), *aff'd*, 684 F. App'x 618 (9th Cir. 2017).

Here, the totality of the *Mitchell* factors, viewed in light of the purpose of state sovereign immunity, similarly weighs in favor of finding that the Bar is immune as an arm of the state. Although a money judgment would not be paid out of state funds, the Bar performs central government functions. The remaining *Mitchell* factors are either neutral or tilt the scale toward immunity.

> **a.    A Money Judgment Would Not Be Satisfied Out of State Funds**

The first factor—whether a money judgment would be satisfied out of state funds—weighs against immunity. The state of Oregon would have no legal or practical obligation to satisfy a money judgment against the Bar. *See* ORS § 9.010(6) ("No obligation of any kind incurred or created under this section shall be, or be considered, an indebtedness or obligation of the State of Oregon."). However, this factor is not dispositive, and "even when there is no risk to the state treasury, the state is immune when sued in its own name." *Crosetto v. State Bar of Wis.*, 12 F.3d 1396, 1402 (7th Cir. 1993); *see Thiel v. State Bar of Wis.*, 94 F.3d 399, 401 (7th Cir. 1996) (stating that "the effect on the state treasury was the least important" factor in the court's sovereign immunity analysis), *overruled on other grounds by Kingstad v. State Bar of Wis.,* 622 F.3d 708 (7th Cir. 2010); *see also Fed. Mar. Comm'n*, 535 U.S. at 765 ("While state sovereign immunity serves the important function of shielding state treasuries and thus preserving the States' ability to govern in accordance with the will of their citizens, the doctrine's central purpose is to accord the States the respect owed them as joint sovereigns." (internal quotation marks and citations omitted)).

> **b.    The Bar Performs the Central State Government Function of Regulating Attorneys**

The second factor—whether the entity performs central state government functions—weighs strongly in favor of immunity. In Oregon, "[n]o area of judicial power is more clearly marked off and identified than the courts' power to regulate the conduct of the

attorneys who serve under it." *Ramstead v. Morgan*, 347 P.2d 594, 601 (Or. 1959).  This power comes from both "the necessity for the courts' control over an essential part of the judicial machinery with which it is entrusted by the [Oregon] constitution," as well as from the "long and jealously guarded tradition vested in the judiciary" of controlling members of bar organizations. *Id.*; *see Sadler v. Or. State Bar*, 550 P.2d 1218, 1220–26 (Or. 1976) ("The power to admit a person to the practice of law is judicial.").  It is thus well settled that regulating attorneys is an essential state government function in Oregon.

The Oregon Supreme Court has delegated some of its regulatory authority to the Bar.  The Bar regulates admission to the practice of law in Oregon and the conduct of practicing attorneys.  *See* ORS §§ 9.080; 9.114; 9.210; 9.490; B.R. 2.3.  The Oregon Supreme Court nonetheless closely oversees the Bar's regulatory activities, retaining original jurisdiction to make decisions concerning admissions, reinstatement, and attorney discipline.  ORS § 9.536; Oregon Rule of Appellate Procedure ("ORAP") 11.25.  The Supreme Court appoints the Bar's presiding disciplinary adjudicator, as well as members to the Bar's Disciplinary Board, State Professional Responsibility Board, Unlawful Practice of Law Committee, and the Board of Bar Examiners.  *See* ORS §§ 9.210, 9.532; B.R. 1.1, 2.3, 2.4, 12.1; Bylaws §§ 18.100, 28.1.  When the Bar amends the Bylaws that apply to admission to practice law in Oregon, the Supreme Court must approve the changes.  *See* ORS § 9.542; Bylaws § 28.6.  The Supreme Court also reviews all rules of procedure relating to admission to practice law, discipline, resignation, and reinstatement of members of the Bar, ORS § 9.005(7), and reviews the eligibility of candidates for the Board of Governors, *id.* § 9.042.  The Chief Justice reviews annual statements of the Bar's financial condition.  *Id.* § 9.100.  Finally, the Supreme Court approves the Bar's budget for admissions, discipline, and minimum continuing legal education programs in conjunction with the budgets of other activities of the Bar.  Bylaws § 7.202.

The Oregon Supreme Court and the Bar cooperate to carry out the central state government function of regulating attorneys.  This satisfies the second *Mitchell* factor, which has often proven dispositive.  *See, e.g.*, *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032,

1035 (9th Cir. 1999); *see also O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (per curiam) ("[T]he state bar is the investigative arm of the Supreme Court of Nevada, charged with investigating and disciplining the legal profession of the state, and as such an agency, it too is immune from suit in federal court under the [E]leventh [A]mendment.").

### c.    The Bar May Sue and Be Sued in Some Capacities

The third factor—whether the entity may sue or be sued—is neutral.  If an entity can sue and be sued in its own name, this factor may militate against a finding of Eleventh Amendment immunity.  *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992).  Here, Oregon law states that the Bar "may sue and be sued." ORS § 9.010(5).  "However, it does not necessarily follow that the [Bar] can be sued for money damages just because it can be sued in its own name." *Belanger*, 963 F.2d at 254.  Moreover, state statutes that waive sovereign immunity in state court for some purposes do not necessarily waive Eleventh Amendment immunity.  *See Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004).  "If [the Bar] is a state agency for purposes of the Eleventh Amendment, suits against the [Bar] in its own name are subject to the same Eleventh Amendment constraints as suits against the state." *Belanger*, 963 F.2d at 254.  Regardless of which way the third factor points, the Ninth Circuit affords it less importance than the first two *Mitchell* factors.  *Sato*, 861 F.3d at 934.

### d.    The Bar Takes Some Property for the Benefit of the State and Subject to Conditions

The fourth factor of whether the entity has the power to take property in its own name or only in the name of the state is likewise neutral.  The same statute that gives the Bar the ability to sue and be sued in some cases also provides that the Bar may "acquire, hold, own, encumber, insure, sell, replace, deal in and with and dispose of real and personal property." ORS § 9.010(5).  Still, other statutes limit the Bar's ability to hold and dispose of certain property. For example, the Uniform Disposition of Unclaimed Property Act grants the Bar the ability to take possession of abandoned client funds held in lawyers' trust accounts. *Id.* § 98.386(2).  The funds nonetheless belong to the state, *id.* § 98.304, and the Bar must appropriate the funds to the

Legal Services Program in order to provide free legal services to low-income Oregonians, *id.*
§§ 98.386(2), 9.572(1).  Similarly, the Bar receives funds from fees and charges in Oregon
circuit courts that it must use for funding the Legal Services Program, which in turn funds
statewide legal aid.  *Id.* § 9.577.  On the whole, this factor is a close question that is thus entitled
to little weight.  *See Belanger*, 963 F.2d at 254 (concluding that the fact that school districts,
although holding property in their own name, also held public schools for the benefit of the state
meant that the fourth *Mitchell* factor was too close to call).

e.    **The Bar Has the Corporate Status of a State Agent**

Finally, the fifth factor concerning the Bar's corporate status weighs in favor of
immunity.  By statute, the Bar has the corporate status of a state agent.  It is "a public corporation
and an instrumentality of the Judicial Department of the government of the State of Oregon."
ORS § 9.010(2); *see State ex rel. Frohnmayer v. Or. State Bar*, 767 P.2d 893, 895 (Or. 1989)
(discussing the corporate status of the Bar).

In sum, the first *Mitchell* factor weighs against immunity for the Bar, but every remaining
factor either weighs in favor of immunity or is neutral.  In the total balance, the *Mitchell* factors
tip decidedly toward concluding that the Bar is an arm of the state dedicated to aiding the Oregon
Supreme Court in the essential function of regulating the practice of law.  The Bar should
therefore be granted immunity from suit to accord Oregon "the dignity that is consistent with
[its] status as [a] sovereign entit[y]."  *Fed. Mar. Comm'n*, 535 U.S. at 760.  This is the same
status given to other integrated state bars in the Ninth Circuit.  *See, e.g.*, *Hirsh*, 67 F.3d at 715
(California); *O'Connor*, 686 F.2d at 749–50 (Nevada); *Eugster*, 2015 WL 5175722, at *9
(Washington).  It is also the same status that courts within this District have given the Bar on
other occasions.  *See, e.g.*, *Erwin v. Or. ex rel. Kitzhaber*, 231 F. Supp. 2d 1003, 1007 (D. Or.
2001), *aff'd sub nom. Erwin v. Oregon*, 43 F. App'x 122 (9th Cir. 2002).[6]

---

[6] This analysis does not apply to Individual Defendants to the extent Plaintiffs seek
declaratory and injunctive relief against them.  The U.S. Supreme Court has ruled "that
individuals who, as officers of the State, are clothed with some duty in regard to the enforcement
of the laws of the State, and who threaten and are about to commence proceedings, either of a

## 2.    Plaintiffs Fail to State a Claim

Regardless of whether the Court concludes that the Bar is entitled to Eleventh

Amendment immunity as an arm of the state, the Court should dismiss the FAC in its entirety

because Plaintiffs have not stated, and cannot state, a claim against Defendants under 42 U.S.C.

§ 1983.

### A.    Dismissal Under Rule 12(b)(6)

A court may dismiss a case for failure to state a claim if the complaint does not contain

sufficient factual allegations to "plausibly suggest an entitlement to relief." *Starr v. Baca*, 652

F.3d 1202, 1216 (9th Cir. 2011).  Determining "the plausibility of a complaint's allegations is a

two-step process." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th

Cir. 2014).  At the first step, "a court should 'identif[y] pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth.'" *Id.* at 996 (alteration in original)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  At the second step, "a court should

'assume the[ ] veracity' of 'well pleaded factual allegations' and 'determine whether they

plausibly give rise to an entitlement to relief.'" *Id.* (alteration in original) (quoting *Iqbal*, 556

U.S. at 679).

Additionally, "[w]hen faced with two possible explanations, only one of which can be

true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely

consistent with' their favored explanation but are also consistent with the alternative

explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)

---

civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the
Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex parte
Young*, 209 U.S. 123, 155–56 (1908).  The FAC makes clear that Plaintiffs are suing Individual
Defendants only in their official capacities as officers of the state of Oregon.  (FAC ¶¶ 3–4.)  The
Court therefore has jurisdiction to decide whether to grant declaratory and injunctive relief to
prevent Individual Defendants' enforcement of the allegedly unconstitutional statutes at issue.
*See Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994).  However, the
Court may not award money damages against Individual Defendants.  *See Hafer v. Melo*, 502
U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons'
for purposes of [a § 1983] suit because they assume the identity of the government that employs
them.").

(quoting *Iqbal*, 556 U.S. at 678).  Plaintiffs must offer "[s]omething more . . . , such as facts tending to exclude the possibility that the alternative explanation is true." *Id.*; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007) (holding that plaintiffs failed to state a claim for an antitrust violation where they alleged no facts suggesting that defendants' parallel conduct resulted from an agreement, as opposed to identical, independent action).

**B.      Supreme Court Precedent Forecloses Plaintiffs' Claim That Mandatary Membership in the Bar and Compulsory Membership Fees Violate Their First Amendment Rights**

To state a claim for violation of § 1983, Plaintiffs must allege a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Buckley v. City of Redding, Cal.*, 66 F.3d 188, 190 (9th Cir. 1995) (quoting *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990)).  In their first claim for relief, Plaintiffs allege that the law requiring them to join the Bar as a condition of practicing law in Oregon deprives them of their First and Fourteenth Amendment rights.  (FAC ¶ 18.)  They also allege that Defendants deprive them of their constitutional rights by requiring them to "pay compulsory fees as a condition of their professional activities."  (*Id.*)  However, the U.S. Supreme Court has already held that mandatory state bars that assess compulsory membership fees do not amount to a constitutional deprivation.

In *Lathrop v. Donohue*, 367 U.S. 820 (1961), the Supreme Court held that the Wisconsin State Bar could constitutionally compel attorneys to join and contribute financial support.  The Wisconsin State Bar was, like Oregon, an integrated bar that engaged in activities to "promote the public interest by maintaining high standards of conduct in the legal profession and by aiding in the efficient administration of justice." *Id.* at 831–32 (Brennan, J., plurality).  Some of these activities involved expressing views on legislation. *See id.* at 843.  The Supreme Court rejected the argument that the integrated bar ran afoul of the First Amendment's guarantee of free association.  The Wisconsin State Bar furthered "the State's legitimate interests in raising the quality of professional services," and the State could "constitutionally require that the costs of improving the profession in this fashion should be shared by the subjects and beneficiaries of the

regulatory program, the lawyers, even though the organization created to attain the objective also engages in some legislative activity." *Id.* In a concurring opinion, Justice Harlan stated that the Court's precedent left no doubt that States "may constitutionally condition the right to practice law upon membership in an integrated bar association." *Id.* at 849 (Harlan, J., concurring in judgment).

The *Lathrop* plurality expressly declined to reach the related question whether mandatory membership in the bar and compelled membership fees infringed on an attorney's right to free speech. *Id.* at 844 (Brennan, J., plurality). The Supreme Court took up this question in *Keller*, 496 U.S. 1. There, the Court determined that an integrated bar did not transgress the right to free speech because "the compelled association and integrated bar are justified by the State's interest in regulating the legal profession and improving the quality of legal services. The State Bar may therefore constitutionally fund activities germane to those goals out of the mandatory dues of all members." *Id.* at 13–14. The State Bar could not, however, "fund activities of an ideological nature which fall outside of those areas of activity." *Id.* at 14.

Here, Plaintiffs' first claim accuses Defendants of doing nothing more than what *Lathrop* and *Keller* held that an integrated bar may do: require membership and dues as a condition of practicing law in the state. Just as in *Lathrop* and *Keller*, Oregon's interest in regulating the legal profession and improving the quality of legal services justify this requirement. Accordingly, the requirement that Oregon attorneys join the Bar and pay membership dues is not a constitutional deprivation and does not give rise to a § 1983 claim.

The Supreme Court's recent decision in *Janus v. American Federation of State, County & Municipal Employees*, —U.S.—, 138 S. Ct. 2448 (2018), is not to the contrary. The *Janus* decision overruled *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which had previously established that public-sector unions could charge nonmembers fees for the union's costs associated with collective bargaining, even if the nonmembers disagreed with the union's position. *See Abood*, 431 U.S. at 235–36. Under *Janus*, states now violate the First Amendment to the extent they allow public-sector unions to charge nonmembers fees for activities with which

the nonmembers disagree. *Janus*, 138 S. Ct. at 2478, 2486.

Although the *Keller* decision cites *Abood*, *Keller* does not rise or fall with labor union cases. *See Harris v. Quinn*, —U.S.—, 134 S. Ct. 2618 (2014). In *Harris*, the Court took a first step toward overruling *Abood* and held that states could not compel home health care workers to pay union fees if the workers did not wish to join or support a union. *See Harris*, 134 S. Ct. at 2623. But the Court expressly rejected the argument that its ruling would affect integrated bars, noting that *Keller* "fits comfortably within the framework applied in the present case." *Id.* at 2643. Unlike employees in many professions, "[l]icensed attorneys are subject to detailed ethics rules," and states "have a strong interest in allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices." *Id.* at 2643–44. Decisions involving compulsory labor union fees therefore do not affect the rationale underlying *Keller*. *Id.* at 2644.

An unbroken chain of Supreme Court decisions establish that states have a compelling interest in regulating attorneys. Time and again the Supreme Court has concluded that mandatory bar membership and compulsory dues further this compelling interest and are consistent with the First Amendment. Plaintiffs cannot plead around this black letter law. Accordingly, this Court should dismiss Plaintiffs' first claim with prejudice. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (discussing when a court should deny leave to amend).

     **C.**    **Plaintiffs' Fail to Plead That They Have Been Compelled to Pay for Political or Ideological Activities that Are Not Germane to a Permissible Purpose**

          **a.**    **The April Statement Serves the Bar's Mission and the State's Compelling Interest in Promoting Access to Justice, Regulating the Legal Profession, and Improving the Quality of Legal Services**

In their second claim, Plaintiffs allege that Defendants violate their First and Fourteenth Amendment rights by requiring them to pay for political or ideological activities with which they

disagree.  (FAC ¶ 19.)  They base their claim on the premise that the April Statement is political or ideological.  (FAC ¶ 6.)  However, as a matter of law, the Plaintiff's single-minded focus on whether the statement is in any way political or ideological is misplaced.  The correct analysis under *Keller* is whether the statement is germane to a permissible purpose, such as the state's interest in regulating the legal profession and improving the quality of legal services.  The April Statement meets this standard and thus does not give rise to a claim for relief.

Under *Keller*, the Bar may not use compulsory membership dues to fund non-germane activities.  *Keller*, 496 U.S. at 13–14.  Obvious examples of non-germane activities include "endors[ing] or advance[ing] a gun control or nuclear weapons freeze initiative."  *Id.* at 16.  Obvious examples of germane activities include those "connected with disciplining members of the Bar or proposing ethical codes for the profession."  *Id.*  The Supreme Court recognized that most activities will fall somewhere in the middle:

> Precisely where the line falls between those State Bar activities in which the officials and members of the Bar are acting essentially as professional advisers to those ultimately charged with the regulation of the legal profession, on the one hand, and those activities having political or ideological coloration which are not reasonably related to the advancement of such goals, on the other, will not always be easy to discern.

*Id.* at 15.  Drawing that line has fallen to the lower courts.

The Ninth Circuit faced just such a line-drawing question in *Gardner v. State Bar of Nevada*, 284 F.3d 1040 (9th Cir. 2002).  In that case, an attorney challenged the Nevada integrated bar's public information campaign aimed at correcting "a serious public perception problem for Nevada's justice system."  *Id.* at 1041.  The Nevada bar called the campaign "Nevada Lawyers—Striving To Make The Law Work for Everyone."  *Id.* at 1041–42.  The objecting attorney sued to enjoin the campaign.  He argued that the bar's use of his membership dues to fund "Nevada Lawyers—Striving To Make The Law Work for Everyone" violated his rights of freedom of speech and association.  *Id.* at 1042.  The trial court disagreed, denying the attorney's motion for a preliminary injunction and granting the bar's motion to dismiss the

PAGE 15 – DEFENDANTS' FRCP 12(b)(1) AND 12(b)(6) MOTIONS TO DISMISS FIRST
AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

complaint with prejudice.  It ruled "that the campaign was germane to the State Bar's compelling interest and stated purpose to advance understanding of the law, the system of justice, and the role of lawyers, as opposed to nonlawyers, to make the law work for everyone."  *Id.* (internal quotation marks omitted).

On appeal, the Ninth Circuit affirmed the decision that Nevada's public education campaign did not violate the First Amendment.  *Id.* at 1043.  The Ninth Circuit acknowledged that "every effort to persuade public opinion is political in the broad sense of that term."  *Id.* at 1042–43.  "However, what *Keller* found objectionable was not political activity but partisan political activity as well as ideological campaigns unrelated to the bar's purpose."  *Id.* at 1043. The court recognized "mak[ing] the law work for everyone" as a permissible purpose of a state bar.  *Id.*  The activity in question furthered this purpose by helping "to dispel any notion that lawyers are cheats or are merely dedicated to their own self-advancement or profit.  The law, rightly understood, is not a business where the bottom line dictates the conduct that is permissible."  *Id.*  Particularly because "[t]he law is a profession where a near monopoly of access to the courts is granted to a trained group of men and women," the bar had a responsibility to ensure "that lawyers strive to make the law work for everyone by their fair and zealous representations of their clients."  *Id.*  The Ninth Circuit concluded, "It is no infringement of a lawyer's First Amendment freedoms to be forced to contribute to the advancement of the public understanding of law."  *Id.*; *see Kingstad*, 622 F.3d at 719–21 (stating that the Seventh Circuit finds persuasive *Gardner*'s "powerful defense of the legal profession and the need for fostering—and earning—public trust").

The case in front of the Court is controlled by *Gardner*.  The April Statement reminds lawyers of their duty "to safeguard the rule of law and to ensure its fair and equitable administration."  (*See* FAC, Ex. 1.)  The April Statement also emphasizes the importance of serving marginalized, underrepresented, and vulnerable communities.  (*Id.*)  It advocates for no particular political position.  (*See id.*)  As an expression of the standards to which the Bar holds Oregon attorneys, the April Statement squarely falls within the Bar's mission of promoting

access to justice and improving the quality of legal services.  These are acceptable purposes of a state bar.  *See Gardner*, 284 F.3d at 1041–43.

Similarly, the April Statement is germane to "the State's interest in regulating the legal profession and improving the quality of legal services" under *Keller*.  496 U.S. at 13. Condemning murders on the MAX train and asking lawyers to strive to serve vulnerable Oregonians is a far cry from taking a position on gun control or nuclear weapons.  *See id.* at 15– 16.  Having granted lawyers a near monopoly on the practice of law, the state of Oregon, through Defendants, can and should require that the legal services that lawyers provide be, at a minimum, free from violence and prejudice.  As the Oregon Supreme Court has recognized:

> The courts can be fully effective in serving the public only if they can be seen by the people as a symbol of impartial judgment.  To maintain this necessary symbolism it is essential that there be no doubt, even in the mind of the most suspicious, of that impartiality and of the integrity of those entrusted with the legal machinery which insures it.

*Ramstead*, 347 P.2d at 601–02.

To their family, friends, neighbors, and acquaintances, the men and women entrusted with Oregon's legal machinery as lawyers are the most public face of Oregon's courts.  The April Statement does no more than reiterate this fact.  *Keller* allows state bars to promote the integrity of the legal profession in this way.  The April Statement is therefore entirely permissible under the First Amendment and does not give rise to a constitutional injury.

### b.    Under the Bar's Bylaws, Plaintiffs Had the Opportunity to Reclaim Fees Used to Fund Any Non-Germane Activity

Even if the April Statement were not germane to promoting access to justice, regulating attorneys, and improving the quality of legal services, Defendants did not actually compel Plaintiffs to fund it.  After *Keller*, the Bar and Individual Defendants have endeavored to avoid using membership fees on non-germane activities.  Section 12.1 of the Bylaws requires that all the Bar's legislative or policy activities must be reasonably related to nine *Keller*-compliant subjects:

- Regulating and disciplining lawyers;
- Improving the functioning of the courts, including issues of judicial independence, fairness, efficacy, and efficiency;
- Making legal services available to society;
- Regulating lawyer trust accounts;
- The education, ethics, competence, integrity, and regulation of the legal profession;
- Providing law improvement assistance to elected and appointed government officials;
- Issues involving the structure and organization of federal, state, and local courts in or affecting Oregon;
- Issues involving the rules of practice, procedure, and evidence in federal, state, or local courts in or affecting Oregon; and
- Issues involving the duties and functions of judges and lawyers in federal, state, and local courts in or affecting Oregon.

In the event that a member believes that Defendants nonetheless funded political or ideological activities that do not sufficiently relate to a permissible purpose, the Bar's Bylaws set forth a process by which members can seek refunds for the portion of their dues spent on activities with which they disagree. Bylaws § 12.6 outlines the process. In relevant part, it provides:

> **Section 12.6 Objections to Use of Bar Dues**
>
> ***Subsection 12.600 Submission***
>
> A member of the Bar who objects to the use of any portion of the member's bar dues for activities he or she considers promotes or opposes political or ideological causes may request the Board to review the member's concerns to determine if the Board agrees with the member's objections. . . .

/ / /

### Subsection 12.601 Refund

If the Board agrees with the member's objection, it will immediately refund the portion of the member's dues that are attributable to the activity, with interest paid on that sum of money from the date that the member's fees were received to the date of the Bar's refund. . . . If the

Board disagrees with the member's objection, it will immediately offer the member the opportunity to submit the matter to binding arbitration between the Bar and the objecting member.

### Subsection 12.602 Arbitration

If an objecting member agrees to binding arbitration, the matter will be submitted to the Oregon Senior Judges Association ("OSJA") for the designation of three active status retired judges who have previously indicated a willingness to serve as volunteer arbitrators in these matters. The Bar and the objecting member will have one peremptory challenge to the list of arbitrators. . . . The arbitrator will promptly decide the matter, applying the standard set forth in *Keller v. State Bar of California*, 496 U.S. 1, 110 S. Ct. 2228, 110 L. Ed. 2d 1 (1990), to the expenditures to which the member objected. . . . If the arbitrator agrees with the member's objection, the Bar will immediately refund the portion of the member's dues that are reasonably attributable to the activity, with interest at the statutory rate paid on the amount from the date that the member's fees were received to the date of the Bar's refund. . . .

This process complies with *Keller* and other Supreme Court decisions regarding acceptable refund procedures. *See Keller*, 496 U.S. at 17; *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 310 (1986). Appellate courts have also concluded that similar procedures conform to the First Amendment's requirements. *See Morrow v. State Bar of Cal.*, 188 F.3d 1174, 1175 (9th Cir. 1999); *Gibson v. The Fla. Bar* [*Gibson II*], 906 F.2d 624, 632 (11th Cir. 1990); *see also Gibson v. The Fla. Bar [Gibson I]*, 798 F.2d 1564, 1570 n.5 (11th Cir. 1986) ("[T]he difficult task of discerning proper Bar position issues could be avoided by . . . a refund procedure allowing dissenting lawyers to notify the Bar that they disagree with a Bar position, then receive that portion of their dues allotted to lobbying.").

Plaintiffs had the opportunity for an explanation of how the Bar spent their membership fees, a prompt challenge to the amount of the fee before an impartial decision maker, and a refund with interest of any fee determined to have been spent on non-germane activities. The

First Amendment requires no more.  Accordingly, even if the April Statement were not germane to the Bar's mission and a compelling state interest, Plaintiffs have no constitutional injury to support their § 1983 claim.

### c.    Plaintiffs' Other Allegations Are Too Conclusory to State a Claim

To the extent Plaintiffs' second claim rests on other allegations, these allegations fall short of the federal pleading standard.  *See* Fed. R. Civ. P. 8(a).  For example, in addition to the April Statement, Plaintiffs vaguely allege that the Bar "engages in various types of political and ideological activities which Plaintiffs do not agree with."  (FAC ¶ 6.)  They also allege that they "object to policies and activities of Defendant OSB which are political or ideological in nature and specifically object to many of those policies and activities."  (*Id.* ¶ 12.)  Under *Keller*, these allegations are legally insufficient because there is no allegation that the unspecified policies and activities are non-germane to the Bar's statutory purpose.  These allegations also contain no actual facts and are in reality "nothing more than conclusions" and "[t]hreadbare recitals of the elements of a [First Amendment] cause of action."  *See Iqbal*, 556 U.S. at 678–79.  Because Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

Moreover, even if the Court drew an inference from these allegations that the Bar spent membership funds on non-germane activities, that inference alone would not entitle Plaintiffs to relief.  As discussed above, Plaintiffs must also allege that the Bar lacked a *Keller*-compliant procedure for Plaintiffs to challenge the use of their fees.  This the complaint fails to do.  Nor could it.  The Bylaws establish that Defendants do in fact offer Plaintiffs a means to reclaim any fees mistakenly spent on non-germane activities.  No matter how the complaint is sliced, it fails to allege facts sufficient to state a claim under 42 U.S.C. § 1983.

No amount of amending can save Plaintiffs' complaint.  The law is clear:  Plaintiffs have no constitutional injury under any of their theories.  Judicially-noticeable facts are equally clear:  Defendants did not compel Plaintiffs to fund non-germane political or ideological activities.

Leave to amend would be futile.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)

("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

## IV.    CONCLUSION

For these reasons, Defendants request that the Court dismiss the entirety of Plaintiffs'

first amended complaint with prejudice.

DATED this 9th day of January, 2019.

**TONKON TORP LLP**

By   */s/ Steven M. Wilker*
    Steven M. Wilker, OSB No. 911882
    Megan Houlihan, OSB No. 161273

**MILLER NASH GRAHAM & DUNN LLP**
    Elisa J. Dozono, OSB No. 063150
    Email: elisa.dozono@millernash.com
    Alexander M. Naito, OSB No. 124046
    alexander.naito@millernash.com
    3400 U.S. Bancorp Tower
    111 S.W. Fifth Avenue
    Portland, OR  97204
    Direct Dial:  503-205-2450

**SCHWABE, WILLIAMSON & WYATT**
    W. Michael Gillette, OSB No. 660458
    Email: wmgillette@schwabe.com
    1211 SW Fifth Avenue, Suite 1900
    Portland, OR  97204
    Direct Dial:  503-796-2927

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing **DEFENDANTS' FRCP 12(b)(1) AND**

**12(b)(6) MOTIONS TO DISMISS FIRST AMENDED COMPLAINT AND SUPPORTING**

**MEMORANDUM OF LAW** on:

> Michael L. Spencer
> Attorney at Law
> 403 Main Street
> Klamath Falls, OR  97601
> Email:  mlslaw@live.com

> Attorney for Plaintiffs

☒      by electronic means through the Court's Case Management/Electronic Case File system on the date set forth below

☐      by causing a copy thereof to be e-mailed to each attorney at said attorney's last-known email address on the date set forth below

DATED this 9th day of January, 2019.

**TONKON TORP LLP**

By  * /s/ Steven M. Wilker *
     Steven M. Wilker, OSB No. 911882
     Megan Houlihan, OSB No. 161273
     Attorneys for Defendants

099997/32730/9628649v1