**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **DIANE L. GRUBER** and **MARK RUNNELS**, | Case No. 3:18-cv-1591-JR |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **OREGON STATE BAR**, a Public Corporation; **VANESSA A. NORDYKE**, President of the Oregon State Bar; and **HELEN HIERSCHBIEL**, Chief Executive Officer of the Oregon State Bar. | |
| Defendants. | |

Michael L. Spencer, MICHAEL L. SPENCER LLC, 403 Main Street, Klamath Falls, OR 97601. Of Attorneys for Plaintiffs.

Steven M. Wilker and Paul M. Balmer, TONKON TORP LLP, 888 SW Fifth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs are a current and a former member of the Oregon State Bar (OSB). Membership in the OSB is mandatory to practice law in the state of Oregon. Plaintiffs bring this suit against the OSB, its President, and its Chief Executive Officer. Plaintiffs allege that compulsory membership in the OSB violates Plaintiffs' speech and association rights under the First

PAGE 1 – OPINION AND ORDER

Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment. Plaintiffs' Complaint cites two statements published in 2018 in the monthly OSB *Bulletin* relating to the rise of white nationalism. Plaintiffs allege that these published letters are improper political speech by the OSB with which Plaintiffs do not wish to be associated.

The Court previously granted Defendants' motion to dismiss. The Ninth Circuit affirmed dismissal of Plaintiffs' free speech claim but remanded the dismissal of Plaintiff's associational rights claim because neither the United States Supreme Court nor the Ninth Circuit has yet directly addressed a broad claim of freedom of association based on mandatory bar membership in "an integrated bar that engages in nongermane political activities." *Crowe v. Or. State Bar*, 989 F.3d 714, 729 (9th Cir. 2021).[1] In that decision, the Ninth Circuit noted that the district court would need to resolve what standard governs such an associational rights claim, whether the OSB could meet that standard, and whether the germaneness framework for speech in the context of mandatory bar dues also applies to an associational rights claim. Before the Court resolved these questions on remand, Plaintiffs filed an early motion for summary judgment, arguing that there are no disputed issues of fact that the OSB's compulsory membership violates Plaintiffs' associational rights. Plaintiffs' motion, however, focuses on the OSB's general membership structure and does not reference the OSB's alleged nongermane political activity, the articles posted in the *Bulletin*, or any other specific conduct by the OSB with which Plaintiffs do not wish to be associated. Instead, Plaintiffs challenge the inherent structure of a mandatory integrated bar as violating their rights freely to associate or not associate.

---

[1] The Ninth Circuit, however, expressly declined to decide whether the alleged articles were, in fact, germane or nongermane activities. *See Crowe*, 989 F.3d at 724.

United State Magistrate Judge Jolie A. Russo issued Findings and Recommendation, recommending that this Court deny Plaintiffs' motion for summary judgment. Plaintiffs timely objected, requiring *de novo* review by this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

With some exceptions, "a person may not practice law in [Oregon], or represent that the person is qualified to practice law in this state, unless the person is an active member of the Oregon State Bar." Or. Rev. Stat. (ORS) § 9.160. The OSB's Board of Governors may sue a person believed to be practicing law who is not a member of the OSB, and "[t]he court shall enjoin any person violating ORS 9.160 from practicing law without a license." ORS § 9.166.

Generally, members of the OSB must pay annual dues and active members must pay for

mandatory liability insurance under the OSB's professional liability fund. ORS § 9.191.

Members may request to resign their membership, but the resignation will not be effective unless

and until approved by the Oregon Supreme Court. ORS § 9.261. This requirement exists so that

it can be determined whether there are any open disciplinary charges or investigations, criminal

charges, or other complaints against an OSB member. *See* Or. State Bar R. of P. 9.1 (2021).

The OSB and its Board of Governors are directed by statute to "serve the public interest

by: (a) Regulating the legal profession and improving the quality of legal services;

(b) Supporting the judiciary and improving the administration of justice; and (c) Advancing a

fair, inclusive and accessible justice system." ORS § 9.080(1). As part of this mission, the OSB

publishes a monthly *Bulletin*. The OSB's communications within the *Bulletin*:

> should be germane to the law, lawyers, the practice of law, the
> courts and the judicial system, legal education and the Bar in its
> role as a mandatory membership organization. Communications,
> other than permitted advertisements, should advance public
> understanding of the law, legal ethics and the professionalism and
> collegiality of the bench and Bar.

Oregon State Bar Bylaws, Art. 11, Sec. 1 (Bylaws) (available at http://www.osbar.org/_docs/

rulesregs/bylaws.pdf). In addition:

> Bar legislative or policy activities must be reasonably related to
> any of the following subjects: Regulating and disciplining lawyers;
> improving the functioning of the courts including issues of judicial
> independence, fairness, efficacy and efficiency; making legal
> services available to society; regulating lawyer trust accounts; the
> education, ethics, competence, integrity and regulation of the legal
> profession; providing law improvement assistance to elected and
> appointed government officials; issues involving the structure and
> organization of federal, state and local courts in or affecting
> Oregon; issues involving the rules of practice, procedure and
> evidence in federal, state or local courts in or affecting Oregon; or
> issues involving the duties and functions of judges and lawyers in
> federal, state and local courts in or affecting Oregon.

*Id.* at 12.1.

The OSB published two statements in its April 2018 *Bulletin*. One was from the OSB regarding "White Nationalism and Normalization of Violence" and the other was a "Joint Statement of the Oregon Specialty Bar Associations Supporting the Oregon State Bar's Statement on White Nationalism and Normalization of Violence." The OSB has a procedure in its Bylaws under which members can object if they believe speech by the OSB, including through the *Bulletin*, was nongermane political activity. Plaintiffs complained about the two *Bulletin* notices, and the OSB paid them a proportional refund of their dues.

## DISCUSSION

Plaintiffs argue that being required to join an integrated bar as a condition of practicing law by its nature violates Plaintiffs' associational rights. Plaintiffs argue that the Court should apply strict scrutiny, or at least "exacting" scrutiny, and that under either standard, the OSB's mandatory bar membership structure fails because there are other structures, such as a licensing system allegedly used by 40 percent of other states and similar to what Oregon uses for medical doctors, that would be equally sufficient and less burdensome on First Amendment rights. Plaintiffs do not distinguish between germane and nongermane conduct in this argument and expressly disavow that they are relying on nongermane conduct in their motion. Plaintiffs also argue that the Ninth Circuit's remand in *Crowe* mandates that the Court find in Plaintiffs' favor.

Plaintiffs misunderstand the Ninth Circuit's remand order in *Crowe*. First, the Ninth Circuit repeatedly framed Plaintiffs' case differently than what Plaintiffs argue in the pending motion. The Ninth Circuit described Plaintiffs' associational rights claims as "Plaintiffs claim that because OSB *engages in nongermane political activity* like the *Bulletin* statements, this membership requirement violates their freedom of association under the First and Fourteenth Amendments," and "Plaintiffs raise an issue that neither the Supreme Court nor we have ever

addressed: whether the First Amendment tolerates mandatory membership itself—independent

of compelled financial support—in an integrated bar *that engages in nongermane political*

*activities*." *Crowe*, 989 F.3d at 727, 729 (emphasis added); *see also id.* at 727 (describing the

claim in *Morrow v. State Bar of California*, 188 F.3d 1174, 1175 (9th Cir. 1999), as one in which

"plaintiffs' First Amendment rights are violated by their compulsory membership in a state bar

*association that conducts political activities beyond those for which mandatory financial support*

*is justified*" and that "[t]his is, essentially, the same claim Plaintiffs raise here" (emphasis

added)). Thus, the Ninth Circuit focused on the fact that Plaintiffs' associational rights claim

relied on the OSB allegedly engaging in nongermane political activity (or political activity for

which the Supreme Court previously held mandatory financial support would not be justified).

Second, the Ninth Circuit did not decide the issue of whether the challenged statements in

the *Bulletin* were, in fact, nongermane. *Crowe*, 989 F.3d at 724. Nor did the Ninth Circuit resolve

how much nongermane activity would be required by an integrated bar before mandatory

membership would violate a member's associational rights. The Ninth Circuit simply remanded

so that the district court could determine the proper standard of review for a broader

associational rights claim, apply that standard of review, and determine whether Plaintiffs stated

a claim in their complaint. That ruling did not decide liability as a matter of law. The Court thus

first considers the appropriate standard of review and then considers under that standard

Plaintiffs' motion for summary judgment as framed by Plaintiffs.

## A. Standard of Review

Plaintiffs argue that "exacting scrutiny," applied by the Supreme Court in *Janus v.*

*American Federation of State, County, & Municipal Employees, Council 31*, --- U.S. ---, 138 S.

Ct. 2448 (2018), or strict scrutiny, which is typicallyused in content-based First Amendment free

speech cases, should govern review in this case. The Court, however, is persuaded by the

thorough analysis in *Schell v. Chief Just. & Justs. of Oklahoma Supreme Ct.*, 11 F.4th 1178 (10th Cir. 2021), *cert. denied sub nom. Schell v. Darby*, 142 S. Ct. 1440 (2022).

In *Schell*, the Tenth Circuit analyzed in detail the standard of review to apply in analyzing First Amendment claims based on compulsory membership in an integrated bar. *Id.*, at 1186-91. The Tenth Circuit reviewed the Supreme Court's holdings in *Lathrop v. Donohue*, 367 U.S. 820 (1961); *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977); *Keller v. State Bar of California*, 496 U.S. 1, 110 (1990); and *Janus. Id.*, at 1186-90. The court discussed how an integrated bar generally does not violate associational rights but that the issue "for a free speech or freedom of association violation" is to consider "the germaneness of the alleged activities to the valid goals and purposes of the OBA [Oklahoma Bar Association]." *Id.*, at 1192. The Tenth Circuit concluded that *Janus* and its "exacting scrutiny" standard did not displace *Keller* and its germaneness standard, even for associational rights claims. *Id.*, at 1191.[2] This Court agrees.

**B.  Analysis**

Plaintiffs' motion for summary judgment raises an argument that was squarely rejected in *Keller* and has been repeatedly rejected after *Janus*. Plaintiffs argue that simply having an

---

[2] All other circuits that have considered this issue also have evaluated whether the alleged conduct of an integrated bar is germane when assessing associational rights claims. *See, e.g.*, *File v. Martin*, --- F.4th ---, 2022 WL 1281393, at *4 n.1 (7th Cir. April 29, 2022) (rejecting free association and speech challenges to an integrated bar and expressly noting that the plaintiff did not make a "'germaneness' challenge to any specific State Bar activity funded through compulsory dues"); *Taylor v. Buchanan*, 4 F.4th 406, 409 n.1 (6th Cir. 2021), c*ert. denied sub nom. Taylor v. Heath*, 142 S. Ct. 1441 (2022) (affirming dismissal of a claim alleging that an integrated bar that did not engage in nongermane activities violated the plaintiff's associational rights and noting that the circuits that had allowed such claims to move forward involved claims alleging that the bar associations had engaged in nongermane activities (citing cases); *McDonald v. Longley*, 4 F.4th 229, 252 (5th Cir. 2021), *cert. denied sub nom. McDonald v. Firth*, 142 S. Ct. 1442 (2022); ("In sum, the Bar is engaged in non-germane activities, so compelling the plaintiffs to join it violates their First Amendment rights."); *Crowe*, 989 F.3d at 727, 729 (emphasizing that Plaintiffs' associational rights claim is based on alleged nongermane activity and that, as such, it has not been foreclosed by precedent).

integrated bar that requires membership as a condition to practice law violates their associational

rights—separate from pointing to any allegedly nongermane activities by that integrated bar.

Plaintiffs' motion does not present any argument or evidence relating to nongermane activities,

and Plaintiffs do not discuss the *Bulletin* articles alleged in their Complaint. Instead, "Plaintiffs

contend that the requirement of being a member of the Oregon State Bar violates their right to

Freedom of Association, protected by the 1st Amendment to the United States [Constitution],"

ECF 68 at 2, and assert that "Plaintiffs are required to join an organization in order to practice

law. This, in and of itself, is sufficient to show that their right to Freedom of Association has

been totally infringed." ECF 75 at 6.

Federal circuit courts after *Janus* have rejected the contention made by Plaintiffs. The

Seventh Circuit recently addressed this question in *File v. Martin*, --- F.4th ---, 2022 WL

1281393 (7th Cir. April 29, 2022). In *File*, the Seventh Circuit explained:

> File's claim is squarely foreclosed by the Supreme Court's
> decision in *Keller*, which held that the compelled association
> required by an integrated bar is "justified by the State's interest in
> regulating the legal profession and improving the quality of legal
> services." 496 U.S. at 13, 110 S. Ct. 2228. *Keller* further held that
> an integrated state bar "may . . . constitutionally fund activities
> germane to those goals out of the mandatory dues of all members."
> *Id.* at 14.

*Id.*, at *4. The Seventh Circuit noted that *Keller* has not been overruled, that the Supreme Court

"has turned away several additional opportunities to revisit *Keller* based on *Janus*," and that

*Keller* therefore remains binding and forecloses the plaintiffs' association claim. *Id.*, at *4-5.

Similarly, the Sixth Circuit concluded that a general claim that a mandatory integrated

bar violates the right to free association is foreclosed under *Keller* and *Lathrop*. *Taylor v.*

*Buchanan*, 4 F.4th 406 (6th Cir. 2021), c*ert. denied sub nom. Taylor v. Heath*, 142 S. Ct. 1441

(2022). In *Taylor*, the Sixth Circuit first noted that "while the State Bar of Michigan does engage

in advocacy germane to the legal profession, [the plaintiff] concedes that [the Bar's] activities do not cross the line set in *Keller*." *Id.* at 408. The Sixth Circuit in *Taylor* then discussed why it was bound by *Keller* and *Lathrop* despite the Supreme Court's ruling in *Janus*. *Id.* at 408-09. The court concluded that "*Keller* and *Lathrop* doom [the plaintiff's] First Amendment claims." *Id.* at 409. In so holding, the Sixth Circuit in *Taylor* expressly noted that other circuits had allowed claims to survive only to the extent those claims alleged *nongermane activities*, citing *Crowe*, *Schell*, and *McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021), *cert. denied sub nom. McDonald v. Firth*, 142 S. Ct. 1442 (2022). *Id.*, at 409 n.1.

Additionally, in *Schell*, the Tenth Circuit discussed how an integrated bar does not generally violate associational rights and analyzed the six timely alleged bar association articles for germaneness, concluding that four of them were germane to the Oklahoma Bar's stated mission. *Schell*, 11 f.4th at 1192-94. The Tenth Circuit, however, held that from the allegations in the complaint (which did not include a copy of the articles) it was not clear whether the remaining two were germane. *Id.*, at 1194. The court remanded for further proceedings. *Id.*, at 1194-95. In so holding, the Tenth Circuit noted:

> A potential open issue is to what degree, in quantity, substance, or prominence, a bar association must engage in non-germane activities in order to support a freedom-of-association claim based on compelled bar membership. The *Lathrop* plurality, in concluding that compelled membership in the state bar did not "impinge[ ] upon protected rights of association," thought it important that "the bulk of State Bar activities serve[d]" the legitimate functions of the bar association. 367 U.S. at 843. The plurality concluded that "[g]iven the character of the integrated bar shown on th[e] record," compelled membership was constitutionally permissible "even though" the bar "also engage[d] in some legislative activity." *Id.* The plurality also observed that "legislative activity [was] not the major activity" of the bar. *Id.* at 839. But because this issue was not adequately argued before us, we do not address it now.

*Id.* at 1195 n.11.

Because Plaintiffs here argue that simply being compelled to be a member of an integrated bar violates their associational rights, without regard to the germane or nongermane activities of the OSB, Plaintiffs' motion is denied. Going forward, Plaintiffs must provide evidence that the OSB has engaged nongermane activities and then address the questions posed by the Tenth Circuit in *Schell* and raised by the Supreme Court in *Lathrop*—at what level of nongermane activity does compelled membership in a state bar cross the constitutional line? The Supreme Court in *Lathrop* accepted that "some" degree of nongermane activity did not run afoul of the First Amendment's associational rights. There may also be other factual issues to address, as discussed by Judge Russo. *See* ECF 78 at 10-11. The factual record in this case, however, is not sufficiently developed at this stage in the proceedings, nor have Plaintiffs made any argument based on a factual record other than the inherent structure of the OSB.

## CONCLUSION

The Court adopts the conclusion of the Findings and Recommendation (ECF 78) for the reasons discussed in this Opinion and Order but declines to adopt the remainder of the Findings and Recommendation. Instead, on *de novo* review, the Court DENIES Plaintiffs' motion for summary judgment (ECF 65).

**IT IS SO ORDERED**.

DATED this 16th day of May, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge